JAMES R. THORPE AND OTHERS v. G. HOWARD SPAETH.[1]

November 7, 1941.

No. 32,852.

*Best, Flanagan & Rogers* and *Ward B. Lewis,* for relators.

*J. A. A. Burnquist,* Attorney General, and *P. F. Sherman,* Assistant Attorney General, for respondent.

[1]Reported in 300 N. W. 607.

206

Hilton, Justice.

On *certiorari* to the board of tax appeals, the question presented is the proper construction to be given to § 19 and related sections of the Minnesota income tax act, L. 1933, c. 405, Mason St. 1936 Supp. § 2394-1, *et seq.*

Relators, executors and trustees under the will of Margaret A. Thorpe, contest a deficiency assessment made by respondent, commissioner of taxation, in computing the tax upon their decedent's income. The assessment resulted from a disagreement over the proper basis for determining gain or loss upon the disposition of 25 shares of stock received by decedent on April 3, 1930, as a gift from her father. When received, the shares cost and had a fair market value of $1,296.30 per share. On January 1, 1933, the effective date of the income tax act, their fair market value was $719.69 per share. On May 22, 1935, when the corporation was dissolved, their liquidation value was $1,088.31 per share. Relators, using the 1930 value as the basis for computing gain or loss, deducted $207.99 as capital loss on each share. Respondent, however, concluding that the fair market value as of January 1, 1933, should be taken as the basis, assessed a deficiency capital gain of $368.62 per share. Decision of the proper basis for determining gain or loss on these facts is the problem of this appeal.

With respect to gain and loss, the Minnesota income tax act (L. 1933, c. 405) in § 16(a) [Mason St. 1936 Supp. § 2394-16(a)] provides that gain shall be the amount by which the sum realized upon disposition of property exceeds the adjusted basis of either § 18 or § 19 [*Id.* §§ 2394-18, 2394-19], and loss represents the amount by which the sum realized is less than such adjusted basis. In application, §§ 18 and 19 are mutually exclusive. Section 18 applies only to the disposition or sale of property "acquired on or after January 1, 1933," while § 19 applies only to the disposition or sale of property "acquired before January 1, 1933." Since the taxpayer here acquired her stock before that date, § 19 must supply the basis for determination of the gain or loss. Its full text, as originally enacted, is as follows:

"The basis for determining the gain or loss from the sale or other disposition of property acquired before January 1, 1933, shall be the fair market value thereof on said date except that, if its costs to the taxpayer (or, in the case of inventory property, its last inventory value) exceeds such value, the basis shall be such cost (or last inventory value)."

Seemingly, the language of this section supports the position taken by respondent in adopting the fair market value as the basis for assessing a capital gain to relators' decedent. Since property acquired by gift can have no cost to the taxpayer, and there being no question of inventories involved, respondent urges that the exceptions to this section cannot operate.

Relators, however, oppose this view and alternatively contend, either, that the fair market value on the date of acquisition, or, that the cost to the donor, should be adopted as the basis. For taxpayers receiving gifts after January 1, 1933, § 18(b) specifically authorizes a use of the donor's basis. Whether § 19 can be similarly construed is the main question here presented. However, in answer to relators' first contention, something need be said.

In support of their first contention, relators rely upon analogies presented under federal law. They assert that as used in § 19 the word "costs" means fair market value at the date of gift. Though certain language of some federal cases seems to support this view, it should be observed that those courts were faced with a much different problem. Because "cost" was the only statutory basis stated, either they had to say that fair market value at date of gift controlled, or, there being no "cost" for gifts, the gain basis was zero. Clearly, those courts wished to avoid such a constructional blight upon the will of congress. See Appeal of The Hub, Inc. 3 B. T. A. 1259; Appeal of Gilbert Butler, 4 B. T. A. 756; Robertson v. Commr. Int. Rev. 5 B. T. A. 748; Prindible v. Commr. Int. Rev. 16 B. T. A. 187; Robinson v. Commr. Int. Rev. (6 Cir.) 59 F. (2d) 1008; cf. Hartley v. Commr. Int. Rev. 295 U. S. 216, 55 S. Ct. 756, 79 L. ed. 1399; Bankers' Trust Co. v. Commr. Int.

Rev. 24 B. T. A. 10; Heiner v. Tindle, 276 U. S. 582, 48 S. Ct. 326, 72 L. ed. 714; Lucas v. Daniel (5 Cir.) 45 F. (2d) 58.

Here, however, "cost" to the taxpayer is not the only basis stated by the statute, nor does respondent contend that the gain basis is zero. Since there can be no "costs" to the taxpayer where the property has been acquired by gift, therefore it is respondent's argument that the exceptions to the general rule of § 19 cannot apply. In refutation of this, the federal cases are not pertinent.

Section 18, to which relators look for encouragement, very explicitly adopts the federal rule that a donee may use his donor's basis in computing gain or loss. "Cost to the taxpayer" is stated as the general rule except, among others, as to property "acquired by gift," which "shall be the same as it would be if it were being sold or otherwise disposed of by the last preceding owner not acquiring it by gift." Section 19, however, does not include this special provision as an exception to the general rule of fair market value. But upon the premise that § 19 is ambiguous and defective, relators point to § 16 (b) as evidence in support of their view that, notwithstanding the seemingly explicit language of § 19, the legislature nonetheless intended a donee of property acquired before January 1, 1933, to use his donor's basis.

That portion of § 16(b) [Mason St. 1936 Supp. § 2394-16(b)] here material consists of five sentences, which will be numbered for convenient reference.

"(b) [1] In computing the amount of gain or loss under subsection (a) proper adjustment shall be made for any expenditure, receipt, loss or other item, properly chargeable to capital account by the taxpayer during his ownership thereof. [2] The basis shall be diminished by the amount of the deductions for exhaustion, wear, tear, obsolescence and depletion, which could, during the period of his ownership thereof, have been deducted by the taxpayer under this Act in respect of such property. [3] In addition, if the property was acquired before January 1, 1933, the basis (if other than the fair market value as of said date) shall be

diminished by the amount of exhaustion, wear, tear, obsolescence, or depletion, actually sustained before such date. [4] In the case of stock the basis shall be diminished by the amount of tax-free distributions of capital received by the taxpayer in respect of such stock at any time during his ownership thereof. [5] For the purpose of determining the amount of these adjustments the taxpayer who sells or otherwise disposes of property acquired by gift shall be treated as the owner thereof from the time it was acquired by the last preceding owner who did not acquire it by gift."

Relators argue that § 16(b) in sentence 5 requires the donor's basis to be used for the purpose of adjustments to the basis. Thus, had their taxpayer received real estate instead of stock, cost thereof to the donor would be adjusted and then compared with fair market value on January 1, 1933, to determine which was higher. If, however, as respondent contends, fair market value is the only basis for property acquired prior to that date, then these adjustments would be unnecessary. Since such adjustments are required by sentence 5 as to all donees, § 16(b) is a nullity if respondent's contention is adopted. Because the legislature cannot have intended to enact a nullity, nor to distinguish between real and personal property, therefore it must have intended that a donee use his donor's basis for all cases. Thus, relators conclude, "costs to the taxpayer" as contained in § 19 should be construed to mean "costs to the donor" so as to harmonize it with § 16(b).

We have concluded that the reasoning process by which this result is reached is fallacious. In our opinion, the fact that § 16(a) requires the bases of both § 18 and § 19 to be adjusted in accordance with § 16(b) does not make the latter subsection incompatible with § 19. We think that § 16(a) requires adjustments only of those bases in § 19 which are stated as exceptions to the general rule.

Both § 18 and § 19 recognize cost as a proper basis. Thus everything said in § 16(b) with respect to adjustments of the cost basis can refer equally to both those sections. But the third sentence, however, can refer only to § 19 because, to be applicable, the prop-

erty must have been acquired before January 1, 1933. Furthermore, by excluding adjustments where fair market value is the basis, that sentence is legislative recognition that these adjustments have already been reflected in the fair market value. By using "in addition" in sentence 3, the legislature indicated that the taxpayer who is subject to sentence 3 is the same type that is subject to sentences 1 and 2. Since sentence 3 excludes those taxpayers whose basis is the fair market value, it is reasonable to assume that they were also excluded from the application of sentences 1 and 2 as well as sentence 4, which is of the same type.

Therefore, relators' case must fail because their whole argument rests upon the assumption that sentence 5 of § 16(b) represents legislative manifestation that all donees, whether they acquired their property before or after January 1, 1933, were to adjust their basis in accordance with the provisions of § 16(b). Reading sentence 3 to exclude taxpayers subject to the general rule of § 19 from any adjustments under § 16(b), and keeping this in mind in examining sentence 5, we think it is clear that sentence 5 was intended to apply only to donees whose basis is something other than fair market value. The donees who have acquired property prior to January 1, 1933, are not in that class because they are governed by the general rule of § 19. But the donees who acquired property after January 1, 1933, are in that group. Therefore, sentence 5 applies only to them.

Actually, the purpose of sentence 5 was to define when the period of ownership of property by donees would be deemed to arise. This was necessary since the adjustments required by sentences 1, 2, and 4 were for the "period of his [the taxpayer's] ownership" of the property. Sentence 5 could define this period for donees without being at all repetitious of the rule of § 18(b), which only stated what basis they should have. Were it merely repetitious, the inference would be open that it was intended to accomplish something more. But in all respects the language of §§ 16(a) and 16(b) harmonizes with the language of §§ 18 and 19.

From what has been said, it may be concluded that we are of the opinion that the legislature by Ex. Sess. L. 1937, c. 49, § 14, Mason St. 1940 Supp. § 2394-19, amended § 19 so as to standardize the basis for all donees, and did not merely clarify prior law. Then, for the first time, donees acquiring property prior to the basic date were authorized to use their donor's basis. Thus we cannot see the materiality of the argument that the net economic result of the transaction in this case was loss. The gain or loss for income tax purposes must be computed not by reference to the stock market, but by reference to the methods and measures provided by the legislature. Until 1937, that measure for donees acquiring property before the basic date was fair market value on January 1, 1933.

Writ discharged and order affirmed.