**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1547**

650 North Main Association,
Respondent,

vs.

Frauenshuh, Inc. (Territorial Springs
Riverview, LLC, Frauenshuh Sweeney, LLC),
Appellants,

Kraus-Anderson Construction Company,
Respondent,

Doe Affiliates 1-20, et al.,
Defendants,

and

Kraus-Anderson Construction Company,
Defendant and Third Party Plaintiff,

vs.

Berwald Roofing Company, Inc., et al.,
Third Party Defendants.

**Filed August 22, 2016
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Washington County District Court
File No. 82-CV-11-6366

Hannah R. Stein, Levin Law Group, LLP, Minneapolis, Minnesota (for respondent 650 North Main)

Peter M. Waldeck, Waldeck Law Firm P.A., Minneapolis, Minnesota (for appellant Frauenshuh)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

## S Y L L A B U S

I.      According to the plain language of the statute, a declarant-developer of a common interest community may be liable for breaching the implied warranties provided by Minnesota Statutes section 515B.4-113(b) (2014), even if the declarant does not cause the breach by its own actions, but only hires others whose actions breach the warranties.

II.      A declarant-developer of a common interest community may be liable for breaching the implied warranties provided by Minnesota Statutes section 515B.4-113(b)(2), if a vendor-contractor hired by the declarant breaches the housing warranty provided by Minnesota Statutes section 327A.02, subd. 1(c) (2014), even if the vendor is exempt from liability due to lack of timely notice of the dwelling's defects.

III.      A district court's award of "costs of litigation" to a prevailing party under Minnesota Statutes section 515B.4-116(b) (2014) is not limited to only the costs and reasonable disbursements that the district court "shall" award to the prevailing party in a district court action under Minnesota Statutes sections 549.02 and 549.04 (2014).

## O P I N I O N

**HOOTEN**, Judge

In this construction dispute, appellant-developer argues that the district court erred by (1) refusing to dismiss as untimely respondent common interest community association's motion for judgment as a matter of law (JMOL) and for failure to secure a

hearing date within 60 days; (2) permitting respondent to assert that the building had architectural design defects; (3) granting respondent's motion for JMOL with regard to the architectural design defects found by the jury; and (4) awarding unreasonable attorney fees, costs, and disbursements to respondent. In its related appeal, respondent argues that the district court erred by denying its motion for JMOL with regard to the construction defects found by the jury and that therefore respondent is entitled to an increase in its attorney fee award. We affirm in part, reverse in part, and remand.

**FACTS**

In 2005, appellants Territorial Springs Riverview, LLC, and Frauenshuh Sweeney, LLC, (collectively Frauenshuh) began developing a residential building, the 650 North Main building. Frauenshuh hired respondent Kraus-Anderson Construction Company to construct the building and J. Buxell Architecture to design the building. Frauenshuh marketed and sold units of the building to individuals. Respondent 650 North Main Association (the association) is an association of the persons who own units in the building.

A few years after the construction, the association discovered that the building was experiencing significant water damage. The association brought suit against Frauenshuh[1]

---

[1] In addition to Territorial Springs Riverview, LLC, and Frauenshuh Sweeney, LLC, the association brought suit against Frauenshuh, Inc., a related entity that develops nonresidential real estate. Frauenshuh, Inc., was eventually dismissed from this case. All references to "Frauenshuh" in this opinion refer to Territorial Springs Riverview, LLC, and Frauenshuh Sweeney, LLC, not Frauenshuh, Inc. Frauenshuh argues that there is no valid judgment because the district court mistakenly entered judgment against Frauenshuh, Inc. To the extent that there was error in the entry of judgment, we direct that on remand the district court clarify that judgment was entered against Territorial Springs Riverview, LLC, and Frauenshuh Sweeney, LLC, not Frauenshuh, Inc. *See* Minn. R. Civ. P. 60.01 (permitting district court to correct clerical mistakes in judgments and orders).

3

and Kraus-Anderson, asserting claims of negligence and breach of the statutory warranty provided by Minn. Stat. § 327A.02 (2014). With regard to Frauenshuh, the association also asserted claims of breach of the statutory warranties provided by Minn. Stat. § 515B.4-113 (2014), breach of warranties under the purchase and sale contracts, and breach of fiduciary duty. Frauenshuh filed a cross-claim against Kraus-Anderson for indemnity and/or contribution, based in part on the indemnification provisions in the contract between Frauenshuh and Kraus-Anderson. Kraus-Anderson filed third-party claims for contribution and indemnity against the subcontractors that worked on the building. J. Buxell was never made a party to the case.[2] Before trial, the association dismissed the claims of negligence, breach of warranties under the purchase and sale contracts, and breach of fiduciary duty, and the trial proceeded on the statutory warranty claims.

The jury delivered its special verdict on February 24, 2014. The jury found that Frauenshuh did not breach either the chapter 327A warranty or the chapter 515B warranties. The jury found, however, that the building had major construction defects due to its non-compliance with building standards, that Kraus-Anderson breached the chapter 327A warranty, and that Kraus-Anderson's breach of the warranty was a direct cause of the association's damages. The jury found also found that J. Buxell's design of the building was defective and that the defective design was a direct cause of the association's damages. The jury attributed $101,250 in damages to J. Buxell and $101,250 in damages to Kraus-Anderson, but attributed no damages to Frauenshuh. The jury also found that neither

---

[2] We are only considering the liability of Frauenshuh for the association's damages because none of the contribution or indemnity claims are currently before us.

4

Kraus-Anderson nor Frauenshuh received written or actual notice of the defects within six months of when the association discovered or should have discovered the damage

On March 26, 2014, the association moved for JMOL or a new trial, arguing that the jury's answers on the special verdict form were contradictory and incapable of reconciliation. The district court refused to grant JMOL with regard to the construction defects, determining that Frauenshuh could not be held responsible for the damages attributed to Kraus-Anderson by the jury because Kraus-Anderson did not receive notice of the defects within six months, as required for liability under the chapter 327A warranty. *See* Minn. Stat. § 327A.03(a) (2014). However, the district court granted the motion with regard to the architectural design defects found by the jury, concluding that Frauenshuh was responsible for the architectural design defects and was liable to the association for the $101,250 in damages attributed to J. Buxell by the jury.

In addition to the $101,250 that the jury attributed to J. Buxell, the district court ordered that Frauenshuh pay $171,000 in attorney fees and $75,766.41 in costs and disbursements to the association, for a total judgment against Frauenshuh of $348,016.41. This appeal followed.

**ISSUES**

I.      Did the district court err by refusing to dismiss the association's motion for JMOL for failure to comply with Minn. R. Civ. P. 59.03?

II.     Did the district court err by partially denying the association's motion for JMOL with regard to the construction defects found by the jury?

III.    Did the district court err by permitting the association to argue to the jury that the building's architectural design defects constituted a breach of the statutory warranties?

5

IV.     Did the district court err by partially granting the association's motion for JMOL and holding Frauenshuh liable for the damages attributed to J. Buxell for architectural design defects?

V.      Did the district court abuse its discretion in awarding attorney fees and should the attorney fee award be modified or remanded in light of this opinion?

VI.     Did the district court err in awarding "costs of litigation" under Minn. Stat. § 515B.4-116(b)?

## ANALYSIS

I.      **The district court did not err by refusing to dismiss the association's motion for JMOL for failure to comply with Minn. R. Civ. P. 59.03.**

A.      **The association timely filed its notice of motion for JMOL or a new trial.**

Frauenshuh argues that the association failed to file its motion for JMOL or a new trial within 30 days of service of notice of the filing of the district court's order. Minn. R. Civ. P. 59.03 provides that "[a] notice of motion for a new trial shall be served within 30 days after a general verdict or service of notice by a party of the filing of the decision or order." A motion for JMOL is subject to the same 30-day deadline. Minn. R. Civ. P. 50.02. "Failure to comply with the [now 30] day time limitation is a jurisdictional defect which deprives the court of the jurisdiction to hear and rule on the tardy motion." *Differt v. Rendahl*, 306 N.W.2d 813, 814 n.1 (Minn. 1981). Subject matter jurisdiction cannot be waived and can be raised at any time. *Williams v. Smith*, 820 N.W.2d 807, 813 (Minn. 2012). The existence of subject matter jurisdiction is a question of law, which we review de novo. *Id.* We also interpret the rules of civil procedure de novo. *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d. 692, 696 (Minn. 2012).

The association filed its motion for JMOL or a new trial on March 26, 2014. The district court entered judgment based on the special verdict on July 10, 2014, stating specifically in its underlying order that it would "entertain appropriate post-trial motions, including [the association's] motion for [JMOL] or, in the alternative, for a new trial." On July 14, 2014, Kraus-Anderson served a notice of the filing of the district court's July 10, 2014 order, starting the 30-day time limit for the filing of motions for JMOL or a new trial. On September 26, 2014, after the expiration of the 30-day time limit, the association filed an amended notice of motion for JMOL or a new trial.

The purpose of rule 59.03 "is to start the time for making post-trial motions." *Rieman v. Joubert*, 376 N.W.2d 681, 684 (Minn. 1985). Service of the notice of the filing of the district court's order "is essentially a timing mechanism." *Id.* Because the time limitation for bringing posttrial motions under rule 59.03 commences upon service of the notice of filing of the district court's order, the failure to serve such notice means that the other party has an indefinite time to bring a motion. *Id.*; 2 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 59.25 (5th ed. 2011). Rule 59.03, which is concerned with timing limitations after service of notice of filing, does not prohibit a party from bringing posttrial motions before service of the notice of filing. *See, e.g.*, *Krech v. Comm'r of Revenue*, 557 N.W.2d 335, 343 (Minn. 1997) (holding that under rule 59.03, posttrial motions brought before either party served notice of filing of the court's order were timely). We conclude that the association's motion for JMOL or a new trial was timely filed and, therefore, the district court had subject matter jurisdiction over it.

**B.** **Frauenshuh waived its right to object to the timeliness of the hearing on the association's motion for JMOL.**

Frauenshuh argues that the association's motion for JMOL should have been denied because the association failed to secure a hearing within 60 days. A motion for JMOL or a new trial "shall be heard within 60 days after such general verdict or notice of filing, unless the time for hearing be extended by the court within the 60-day period for good cause shown." Minn. R. Civ. P. 59.03; *see* Minn. R. Civ. P. 50.02 (providing that rule 59 applies to motions for JMOL). Unlike the requirement that notice of a motion for JMOL or a new trial be filed within 30 days, the 60-day time limit for hearing such motions "is a procedural tool and does not divest the district court of jurisdiction." *Rubey v. Vannett*, 714 N.W.2d 417, 422 (Minn. 2006).

By stipulation filed on August 6, 2014, the parties agreed that posttrial motions would be heard on October 31, 2014, after the expiration of the 60-day period. The district court did not make any determination of good cause for extension of the hearing. This court has held, however, that parties who acquiesce to the scheduling of hearings that are untimely under rule 59.03 waive their right to object. *See Imperial Developers, Inc. v. Seaboard Sur. Co.*, 518 N.W.2d 623, 628 (Minn. App. 1994) (stating that party waived objection to timeliness of hearing date by not objecting when date was scheduled), *review denied* (Minn. Aug. 24, 1994); *Tex. Commerce Bank v. Olson*, 416 N.W.2d 456, 462–63 (Minn. App. 1987) ("By its own admission, the bank was aware of the error, yet raised no objection until the [then 30-day time limit] had expired. The bank cannot now insist on strict compliance with the rule."). Because Frauenshuh not only failed to object to the

8

hearing date but actually stipulated to a date after the expiration of the 60-day period, it waived any objection it may have had to the timeliness of the hearing date.

## II. The district court erred by partially denying the association's motion for JMOL with regard to the construction defects found by the jury.

In its related appeal, the association argues that Frauenshuh, as a matter of law, breached the chapter 515B warranties based on the jury's findings that the building had major construction defects and that Kraus-Anderson breached the chapter 327A warranty, despite the jury's finding that Frauenshuh did not breach the chapter 515B warranties. For that reason, the association argues that the district court should have granted JMOL to the association with regard to the construction defects found by the jury

We review the district court's decision to grant or deny a motion for JMOL de novo. *Moore v. Hoff*, 821 N.W.2d 591, 595 (Minn. App. 2012). A district court should grant JMOL

> only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the district court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Id.* (alteration omitted) (quotation omitted). Appellate courts will not set aside a jury's answer on a special verdict form unless the answer "is perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d. 860, 888 (Minn. 2010) (quotation omitted). "The purpose of special verdicts is in part to elicit the ultimate facts from the jury and to allow the court to draw the legal conclusions." *Sabasko v.*

9

*Fletcher*, 359 N.W.2d 339, 343 (Minn. App. 1984), *review denied* (Minn. Mar. 21, 1985). "[A] special verdict establishes the ultimate facts enabling both the [district] court and an appellate court to review more precisely the basis for the jury's decision." *Id.* When reviewing the grant or denial of a motion for JMOL, we consider the evidence in the light most favorable to the nonmoving party. *Moore*, 821 N.W.2d at 595. If answers on a special verdict form "can be reconciled on *any* theory" consistent with the evidence and the fair inferences drawn from the evidence, "the verdict will not be disturbed." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) (quotation omitted). A district court presented with inconsistent special verdict form answers may change the answers, "in effect partially directing a verdict, where it is deemed that a jury's response must be changed as a matter of law." *Daly v. McFarland*, 812 N.W.2d 113, 125 (Minn. 2012) (quotation omitted).

The parties do not dispute that Frauenshuh, as the developer, is a declarant under the Minnesota Common Interest Ownership Act (MCIOA), Minn. Stat. §§ 515B.1-101 to .4-118 (2014). *See* Minn. Stat. § 515B.1-103(15) (defining "declarant"). The MCIOA provides the following implied warranties:

> A declarant warrants to a purchaser that:
> (1) a unit and the common elements in the common interest community are suitable for the ordinary uses of real estate of its type; and
> (2) any improvements subject to use rights by the purchaser, made or contracted for by the declarant, or made by any person in contemplation of the creation of the common interest community, will be (i) free from defective materials and (ii) constructed in accordance with applicable law, according to

10

> sound engineering and construction standards, and
> in a workmanlike manner.

Minn. Stat. § 515B.4-113(b). To establish a breach of warranty claim, a plaintiff must show the existence of a warranty, a breach of that warranty, and a causal connection between that breach and the damages incurred. *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52–53 (Minn. 1982).

Chapter 515B is based upon the Uniform Common Interest Ownership Act (UCIOA) (1982) and codifies the rights of a homeowners' association in a common interest community to bring causes of action against the declarant for engineering and construction defects. *See Horodenski v. Lyndale Green Townhome Ass'n*, 804 N.W.2d 366, 373 (Minn. App. 2011) (stating that the MCIOA was modeled on UCIOA and drawing upon comment to UCIOA in defining term). "The intention of the drafters of a uniform act becomes the legislative intent upon enactment." *In re Butler*, 552 N.W.2d 226, 231 (Minn. 1996). A comment to the UCIOA states that the implied warranty section "overturns the rule still applied in many states that a professional seller of real estate makes no implied warranties of quality." Unif. Common Interest Ownership Act (1982) § 4-114 cmt. 1, 7 pt. 2 U.L.A. 156 (2009). The comment also observes that the rule of caveat emptor "has been increasingly recognized as a relic of an earlier age whose continued existence defeats reasonable expectations of purchasers" and that "the judicial tide is now running in favor of seller liability." *Id.*

The doctrine of caveat emptor is based on the expectation that the buyer and seller possess similar skills and are engaged in an arm's length transaction. *Tavares v. Horstman*,

542 P.2d 1275, 1282 (Wyo. 1975). The doctrine "fell out of favor as home building methods and governmental regulations became more complex, builders grew in scale and became specialized, and the ordinary home buyer no longer had the skill or training to make a meaningful inspection and discover latent defects." *Bd. of Managers of Park Point at Wheeling Condo. Ass'n v. Park Point at Wheeling, LLC*, ___ N.E.3d ___, ___, No. 1-12-3452, slip op. at 4 (Ill. App. Ct. Dec. 31, 2015). The *Park Point* court summarized the reasoning of the Illinois Supreme Court in adopting the implied warranty of habitability doctrine as follows:

> (1) the modern home buyer is unusually dependent upon the competency and honesty of the builder rather than on the buyer's own ability to discern latent defects, (2) the buyer is making the largest single investment of his or her life, and, (3) in fairness, the repair costs of defective construction should be borne by the builder-seller who created the latent defects.

*Id.* These same policy considerations underlie the legislature's enactment of section 515B.4-113. Indeed, these policy considerations are even more important in the context of common interest communities because any defects in the building may impact a number of unit owners.

Section 515B.4-113(b) recognizes that, in the context of a common interest community, the declarant is in the best position to ensure sound construction. By explicitly stating that the implied warranties include any improvements subject to use rights by the purchaser, regardless of whether the improvements were made by the declarant itself or by a third party, section 515B.4-113(b) enables the homeowners' association, on behalf of the injured unit owners, to sue one party, the declarant, for its damages. In a situation where,

12

as here, the declarant itself did not perform any construction work, the declarant may seek indemnification or contribution from the parties who performed the unsatisfactory work.

We note that the jury was not authorized to make the legal determination as to whether Frauenshuh breached the chapter 515B warranties, but was charged with resolving the factual issue of whether Frauenshuh, by its own actions, caused the building's defects. *See Cochran v. Toher*, 14 Minn. 385, 389, 14 Gil. 293, 295 (1869) ("It is a familiar rule that all questions of law are to be determined by the court, and questions of fact are within the exclusive province of the jury"). The jury, as the fact-finder, determined that Frauenshuh did not cause the building's defects. But, the inquiry does not end there. Upon receipt of the jury's verdict and its determination of the ultimate facts in the case, it was incumbent on the district court to reconcile the jury's answers to the special verdict questions and apply those ultimate facts in accordance with the law.

The jury found the following facts through its answers on the special verdict form: the building had architectural design and construction defects; Frauenshuh, by its own actions, did not cause the building's defects; the defects were caused by J. Buxell and Kraus-Anderson, the parties that Frauenshuh hired to design and construct the building; and those defects caused damages to the association. Applying the law to these ultimate facts, then, Frauenshuh breached the chapter 515B warranties under the plain language of the statute, which provides:

> A declarant warrants to a purchaser that . . . any improvements subject to use rights by the purchaser, *made or contracted for by the declarant*, or made by any person in contemplation of the creation of the common interest community, will be (i) free from defective materials and (ii) constructed in accordance

13

with applicable law, according to sound engineering and construction standards, and in a workmanlike manner.

Minn. Stat. § 515B.4-113(b)(2) (emphasis added).[3]  Therefore, as a matter of law, even if Frauenshuh did not cause the architectural design and construction defects by its own actions, it is nonetheless liable under section 515B.4-113 because it hired the architect and contractor that caused the defects.

The jury's finding that Kraus-Anderson breached the warranty that the dwelling "shall be free from major construction defects due to noncompliance with building standards," Minn. Stat. § 327A.02, subd. 1(c), necessitates the legal conclusion that Frauenshuh breached its warranty that improvements it made or contracted for would be "constructed in accordance with applicable law, according to sound . . . construction standards, and in a workmanlike manner," Minn. Stat. § 515B.4-113(b)(2).  The term "building standards" as used in § 327A.02 "means the materials and installation standards of the State Building Code, adopted by the commissioner of labor and industry pursuant to sections 326B.101 to 326B.194."  Minn. Stat. § 327A.01, subd. 2 (2014).  The "applicable law" referred to by section 515B.4-113(b)(2) includes the very building standards that the jury found were violated by Kraus-Anderson in the construction of the building.  We

_____

[3] The fact that the statute holds the declarant liable for breach of warranty even if the declarant personally performed no work is consistent with the decisions of other courts regarding a developer's liability for breach of the implied warranty of habitability. *See, e.g.*, *Allison v. Home Sav. Ass'n of Kansas City*, 643 S.W.2d 847, 851 n.1 (Mo. Ct. App. 1982) ("[A] defendant need not personally perform the actual construction in order to be held liable.  A developer who causes houses to be built for the purpose of sale to the public will be held to be a builder-vendor, since purchasers from a developer-vendor depend on his ability to hire a general contractor capable of constructing a sound residence.").

conclude that the jury's determination that Kraus-Anderson breached the chapter 327A warranty requires a determination that Frauenshuh breached its chapter 515B warranties.

The issue, then, is whether the association's failure to provide timely notice to Kraus-Anderson of major construction defects as required for liability under chapter 327A, which insulates Kraus-Anderson from liability to the association under chapter 327A, also insulates Frauenshuh from liability under chapter 515B. We conclude that it does not. Section 327A.02 provides that a vendor warrants that a "dwelling shall be free from major construction defects due to noncompliance with building standards" for ten years after the warranty date. Minn. Stat. § 327A.02, subd. 1(c).[4] While chapter 327A provides that a vendor shall warrant that the dwelling will be free from major construction defects, Minn. Stat. § 327A.02, subd. 1(c), a vendor is not liable for breach of warranty under chapter 327A unless the vendor has actual notice of the damage or the vendee reported the damage to the vendor in writing within six months of when the vendee discovered or should have discovered the damage, Minn. Stat. § 327A.03(a). Upon receiving notice of the alleged

---

[4] The special verdict questions refer to Minn. Stat. § 327A.02, subd. 3(a)(2), rather than subdivision 1(c). Both subdivisions 1(c) and 3(a)(2) provide warranties that a dwelling "be free from major construction defects due to noncompliance with building standards" for ten years after the warranty date. Subdivision 3 deals with home improvement warranties, while subdivision 1 deals with warranties in the sale of a completed dwelling. The jury instructions clearly implicate the subdivision 1(c) warranty, rather than the subdivision 3(a)(2) warranty, as they describe a warranty for the sale of a completed dwelling and define the term "vendor," which is used in subdivision 1(c), rather than the term "home improvement contractor," which is used in subdivision 3(a)(2). As the district court clearly intended to refer to subdivision 1(c), we will refer to subdivision 1(c) throughout the opinion, rather than subdivision 3(a)(2).

damage, the vendor has the right to inspect the dwelling and repair the defects. Minn. Stat. § 327A.02, subds. 4, 5.

Because the jury found that neither Kraus-Anderson nor Frauenshuh was notified of the major construction defects within six months of their discovery and that neither Kraus-Anderson nor Frauenshuh had actual notice of the defects, the district court did not enter judgment for the association regarding the $101,250 in damages attributed to Kraus-Anderson by the jury. After hearing the parties' posttrial motions, the district court denied the association's motion for JMOL with regard to the construction defects, referencing the jury's findings regarding the lack of written or actual notice.

Unlike chapter 327A, chapter 515B does not provide that a purchaser must provide notice to the declarant of the damage or provide the declarant with the opportunity to remedy the damage before initiating a lawsuit against the declarant. Chapter 515B does provide, however, a statute of limitations for bringing claims. Specifically, Minn. Stat. § 515B.4-115 requires that a judicial proceeding alleging a breach of the implied warranties provided by section 515B.4-113 be commenced within six years of either when the unit is conveyed or when the purchaser takes possession, whichever is earlier.[5] While section 515B.4-115(b) provides that "the parties may agree to reduce the period of

_____

[5] Minn. Stat. § 515B.4-115 applies to common interest communities that were created before August 1, 2010, while Minn. Stat. § 515B.4-1151 applies to common interest communities that were created between August 1, 2010, and July 31, 2011, and Minn. Stat. § 515B.4-1152 applies to common interest communities that were created on or after August 1, 2011. We discuss section 515B.4-115 in this case because the common interest community was created before August 1, 2010. Although the three sections have slightly different provisions, all three require that a cause of action under section 515B.4-113 be brought within six years after the cause of action accrues.

limitation to not less than two years," there is no indication that the parties entered into such an agreement in this case.[6] And, it is undisputed in this case that the association commenced its lawsuit within the six-year statutory time period. Given that chapter 515B does not provide a notice provision and that the association brought its chapter 515B claim within the six-year statute of limitations, the association's failure to provide timely notice of the defect to Kraus-Anderson or Frauenshuh does not insulate Frauenshuh from liability under chapter 515B, although the jury's findings regarding the lack of timely notice insulate both Kraus-Anderson and Frauenshuh from liability under section 327A. *See Christiansen v. Univ. of Minn. Bd. of Regents*, 733 N.W.2d 156, 159 (Minn. App. 2007) ("[T]his court cannot add to a statute what the legislature has either purposely omitted or inadvertently overlooked"), *review denied* (Minn. Aug. 21, 2007). Because the jury found that Kraus-Anderson breached the chapter 327A warranty that the building would be free from major construction defects, Frauenshuh, as a matter of law, breached the chapter 515B warranties, even though Kraus-Anderson was not held liable due to lack of notice.

We acknowledge that our conclusion that Frauenshuh may be liable for breaching the chapter 515B warranties because of the jury's finding that Kraus-Anderson breached the chapter 327A warranty means that in this case the developer will be liable for the association's damages while the contractor that breached the warranty that the building would be free from major construction defects due to noncompliance with building standards will escape liability under the statute because it did not receive timely notice of

---

[6] Likewise, section 515B.4-1151(b) and section 515B.4-1152(b) provide that the parties may agree to reduce the statute of limitations to not less than two years.

17

the defects.  But, the plain language of section 515B.4-113(b)(2) provides that a declarant warrants that the improvements that are made or contracted for by the declarant will be constructed in accordance with applicable law, and chapter 515B does not have a notice provision.

In enacting chapter 515B in 1993, the legislature was presumably aware of the existing statutory warranties, including section 327A.02, which was enacted in 1977. *Rockford Township v. City of Rockford*, 608 N.W.2d 903, 908 (Minn. App. 2000) ("We . . . presume the legislature acts with full knowledge of existing statutes and judicial interpretations of those statutes.").  Indeed, at a hearing before the Senate Committee on the Judiciary, the interaction between the bills that would become chapter 515B and the existing statutory causes of action was discussed.  Hearing on S.F. 141 Before the S. Comm. on the Judiciary (Feb. 22, 1993).  And, section 515B.4-113(g) states that the warranties provided by section 515B.4-113 do "not in any manner abrogate the provisions of chapter 327A relating to statutory warranties for housing, or affect any other cause of action under a statute or the common law" demonstrating the legislature's awareness of the potential interactions between the chapter 515B statutory warranties and chapter 327A, as well as other existing law.[7]  Moreover, while our conclusion clarifies the breadth of a declarant's liability under chapter 515B, we note that a declarant may be able to protect itself from liability under chapter 515B by entering into an indemnification agreement with

---

[7] Additionally, Minn. Stat. § 515B.4-116(c) provides that "[t]he remedies provided for under this chapter are not exclusive and do not abrogate any remedies under other statutes or the common law, notwithstanding whether those remedies are referred to in this chapter."

its contractor,[8] hiring reputable professionals to design and construct the building, ensuring that the building is constructed as warranted by conducting periodic inspections, and maintaining communication with the common interest community. And, it is possible for a declarant to disclaim liability for defects that would constitute a breach of the chapter 515B implied warranties under certain circumstances.[9]

Therefore, the district court erred by failing to grant the association's motion for JMOL. We reverse the district court's denial of the association's motion for JMOL with regard to the construction defects and direct the district court to enter judgment for the association for an additional $101,250.

III. **The district court did not err by permitting the association to argue to the jury that the building's architectural design defects constituted a breach of the statutory warranties.**

A. **Because the association did not allege negligence or malpractice of a professional, it was not required to follow the requirements of Minn. Stat. § 544.42 (2014).**

Frauenshuh argues that the district court erred by allowing the association to argue that the building had architectural design defects and that Frauenshuh therefore breached

---

[8] Indeed, the contract between Frauenshuh and Kraus-Anderson contained indemnification provisions, which Frauenshuh relied on in part in asserting claims of contribution and/or indemnity against Kraus-Anderson.

[9] Minn. Stat. § 515B.4-114(a) states:

> With respect to a unit available for residential use, no general disclaimer of implied warranties is effective, but a declarant may disclaim liability in an instrument separate from the purchase agreement signed by the purchaser for a specified defect or specified failure to comply with applicable law, if the defect or failure entered into and became a part of the basis of the bargain.

its statutory warranties. Minn. Stat. § 544.42 sets forth procedures to be followed in actions alleging negligence or malpractice of a professional in rendering a professional service. An architect is a professional under section 544.42, subd. 1(1). Because J. Buxell was not a party to the suit and the procedures of section 544.42 were not followed, Frauenshuh filed a motion in limine seeking to exclude any evidence of any architectural design defects of the building. The district court denied this motion, reasoning that because Frauenshuh hired the architect, it could be liable for architectural design defects and noting that if Frauenshuh had thought that there was an issue regarding architect malpractice, it could have brought a claim against the architect.

"Statutory interpretation presents a question of law, which [appellate courts] review de novo." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). The plain language of section 544.42 states that it applies to "an action against a professional alleging negligence or malpractice in rendering a professional service." Minn. Stat. § 544.42, subd. 2. The statute requires that if expert testimony is being used to establish a prima facie case, the party must serve certain affidavits on the opposing party. *Id.*, subds. 2–4. The association pursued claims of breach of statutory warranties under chapters 327A and 515B. Section 327A.02 provides a warranty that a "dwelling shall be free from major construction defects due to noncompliance with building standards" for ten years after the warranty date. Minn. Stat. § 327A.02, subd. 1(c). Section 515B.4-113 provides that a declarant warrants to a purchaser that "a unit and the common elements in a common interest community are suitable for the ordinary uses of real estate of its type" and that "any improvements subject to use rights by the purchaser, made or contracted for by the

20

declarant, . . . will be (i) free from defective materials and (ii) constructed in accordance with applicable law, according to sound engineering and construction standards, and in a workmanlike manner." Minn. Stat. § 515B.4-113(b). Neither of the association's statutory warranty claims constitutes an action alleging negligence or malpractice of a professional, which would require that the provisions of section 544.42 be followed. Having failed to bring a claim against J. Buxell, Frauenshuh cannot now argue that the requirements of Minn. Stat. § 544.42 for actions alleging malpractice against a professional were not met.

**B.    The association presented competent evidence that the building had architectural design defects.**

Frauenshuh argues that there was no competent evidence to support the association's argument that the building had architectural design defects because no licensed architect testified regarding the building's design. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. Expert testimony may only be given by a witness who is qualified or competent to give an expert opinion. *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn. 2002). Determining whether an expert is qualified is a matter that rests largely within the district court's discretion. *Brooks Realty, Inc. v. Aetna Ins. Co.*, 276 Minn. 245, 256, 149 N.W.2d 494, 502 (1967).

At trial, Kent Jones and Mark Chauvin, expert witnesses for the association and Kraus-Anderson, respectively, testified regarding architectural design defects. Jones is a

21

structural engineer and the owner of an engineering firm that specializes in forensic engineering. Forensic engineers investigate problems with buildings, determining why problems exist and how to fix them. Jones' work primarily focuses on investigating water intrusion problems and fixing them. Chauvin is an associate principal with a forensic engineering firm and performs both structurally and architecturally oriented forensic engineering. Chauvin also works on new construction projects.

Frauenshuh cites no law requiring that a licensed architect provide expert testimony in order to support a claim that a building's architectural design defects constitute a breach of a statutory warranty. Moreover, no party brought a claim of architect malpractice; rather, the association brought a claim under section 515B.4-113, claiming that Frauenshuh breached its warranties that the building would be "suitable for the ordinary uses of real estate of its type" and "constructed in accordance with applicable law, according to sound engineering and construction standards, and in a workmanlike manner." Minn. Stat. § 515B.4-113(b). Jones and Chauvin both testified that certain aspects of the design of the building caused a number of problems. While Jones and Chauvin are not licensed architects, they are engineers who perform forensic engineering work, which includes determining what is causing a problem with a building and how to fix the problem. Frauenshuh argues that neither Jones nor Chauvin provided testimony identifying an architectural standard of care. But, to prevail on its claim of breach of warranty, the association had to show that Frauenshuh breached its warranty that "the improvements [of the building] subject to use rights by the purchaser" would be constructed according to "sound engineering . . . standards," Minn. Stat. § 515B.4-113(b)(2), not that the architect

22

committed malpractice. We conclude that the association presented competent evidence that the building had architectural design defects.

**IV. The district court did not err by partially granting the association's motion for JMOL and holding Frauenshuh liable for the damages attributed to J. Buxell for architectural design defects.**

Frauenshuh argues that the district court erred by partially granting the association's motion for JMOL and holding Frauenshuh liable for the $101,250 in damages that the jury attributed to J. Buxell. In granting JMOL in favor of the association with regard to the architectural design defects, the district court reasoned that, based on the special verdict, the jury intended that the association receive an award for the architectural design defects, which the jury found were a direct cause of the association's damages, and that Frauenshuh, as the developer that hired J. Buxell, was liable. Based on this rationale, the district court determined that Frauenshuh, as the developer and declarant, breached its chapter 515B warranties regarding the architectural design defects.

Frauenshuh argues that section 515B.4-113(b)(2) provides only that a declarant warrants that improvements will be constructed according to "sound engineering and construction standards," not according to sound architectural standards. When interpreting a statute, our principal goal is to ascertain and effectuate the intent of the legislature. *Auto Owners Ins. Co. v. Perry*, 749 N.W.2d 324, 326 (Minn. 2008). The first step in statutory interpretation is determining "whether the statute's language, on its face, is ambiguous." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013). If a statute is unambiguous,

23

appellate courts must "enforce the language of the statute and not explore the spirit or purpose of the law." *Id.* (quotation omitted). But, if a statute is ambiguous, appellate courts "may consider the factors set forth by the [l]egislature for interpreting a statute." *Id.* (quotation omitted). Additionally, appellate courts may consider other statutes relating to the same subject matter in order to ascertain legislative intent. *Minn. Life & Health Ins. Guar. Ass'n v. Dep't of Commerce*, 400 N.W.2d 769, 774 (Minn. App. 1987).

Engineering is defined as "the work performed by an engineer" or "[t]he application of scientific and mathematical principles to practical ends such as the design, manufacture, and operation of efficient and economical structures, machines, processes, and systems." *The American Heritage Dictionary of the English Language* 591 (5th ed. 2011). Because "engineering" can be interpreted narrowly to refer only to design work performed by an engineer or more broadly to encompass design work performed by other professionals, such as architects, we conclude that the term "engineering," as it is used in section 515B.4-113(b)(2), is ambiguous.

Interpreting the term "engineering" broadly is consistent with the fact that the only times the term "engineer" is used in chapter 515B, it is used in connection with the term "architect." *See* Minn. Stat. § 515B.2-101(c) (providing that declaration shall not be recorded unless "engineer or architect" certifies that structural components of structures containing units and mechanical systems are substantially completed); Minn. Stat. § 515B.4-105 (stating that disclosure statement for common interest community previously occupied before community formed shall contain opinion of "architect or engineer" describing current condition of structural components and installations material).

24

Moreover, the MCIOA provides that "[t]he remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." Minn. Stat. § 515B.1-114(a). Given these references to the work of engineers and architects throughout chapter 515B and given that the statutory warranties are to be liberally administered, we conclude that the district court properly allowed the association to argue that Frauenshuh breached the chapter 515B warranties because the term "engineering standards" includes architectural standards.

Moreover, we conclude that architectural design defects may violate the chapter 515B warranty that the improvements be constructed according to sound construction standards. *The American Heritage Dictionary* defines "construction" as "[t]he art, trade, or work of building." *American Heritage* at 394. *Merriam Webster's Collegiate Dictionary* defines "construction" as "the process, art, or manner of constructing something." *Merriam Webster's Collegiate Dictionary* 268 (11th ed. 2014). Architectural design work would fall within all of these definitions, as an architect's design of a building is part of the process and art of building a structure.

While Frauenshuh notes that the jury indicated on the special verdict form that Frauenshuh was not liable for breaching the section 515B warranties, as discussed above, the question of Frauenshuh's liability was a legal question for the district court, and, under section 515B, Frauenshuh may be liable for defects in improvements, regardless of whether Frauenshuh or a third party actually performed the work.

Because the warranty under section 515B.4-113(b)(2), that improvements will be constructed according to sound engineering and construction standards, encompasses

25

architectural design defects and because Frauenshuh hired the architect, we conclude that the district court did not err by partially granting the association's motion for JMOL and holding Frauenshuh liable for the damages attributed to J. Buxell for the architectural design defects.

**V.     Although the district court's attorney fee award was proper based on this record and the district court's legal determinations, remand to the district court is necessary given the legal conclusions reached by this court.**

Frauenshuh argues that the district court awarded unreasonable attorney fees to the association. In its related appeal, the association argues that it is entitled to an increase in attorney fees if we determine that the district court erred in denying JMOL with regard to the construction defects. Because the district court is the most "familiar with all aspects of the action from its inception through post trial motions," it is in the best position to evaluate the reasonableness of requested attorney fees. *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 629 (Minn. 1988). We review an attorney fee award for an abuse of discretion. *County of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013). The reasonable value of an attorney's work is a question of fact, and the district court's findings will be upheld unless they are clearly erroneous. *County of Scott v. Johnston*, 841 N.W.2d 357, 361 (Minn. App. 2013).

**A.     The district court did not abuse its discretion in its award of attorney fees.**

The association moved for attorney fees pursuant to Minn. Stat. § 515B.4-116(b), which provides that "[t]he court may award reasonable attorney's fees and costs of litigation to the prevailing party." The association requested $341,865 in attorney fees. In

26

evaluating the association's claim for attorney fees, the district court employed the lodestar method. Under the lodestar method, the district court determines the number of hours reasonably expended on the litigation and multiplies that number by a reasonable hourly rate. *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 621 (Minn. 2008). In determining the reasonableness of the hours expended and the hourly rate, the district court must consider all relevant circumstances, including "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." *Id.* (quotation omitted). After evaluating these factors, the district court awarded the association $171,000 in attorney fees.

Frauenshuh first argues that the attorney fee award was unreasonable because the award should be limited by the association's contingent fee agreement with its counsel. Frauenshuh notes that the attorney-client agreement between the association and its attorneys provided that the attorneys were entitled to "33% of any recovery by the [a]ssociation" and argues that the association should only have been awarded as attorney fees one-half of the 33% of the $101,250 that was awarded to the association in the JMOL order. The district court, in awarding the association approximately half of its requested attorney fees, reasoned in part that the association only prevailed against one defendant on one claim. Frauenshuh extends this reasoning in arguing that the association is only entitled to one-half of the 33% of the $101,250 that was awarded to the association.

As a factual matter, Frauenshuh's method of calculating the association's recovery by limiting the recovery to the $101,250 judgment entered by the district court following the verdict is flawed. Under the attorney-client agreement between the association and its attorneys, "any recovery" includes any attorney fees or costs recovered by the association, not just the amount of the judgment entered by the district court following the verdict. Therefore, it is impossible to determine the amount that the association's attorneys will be paid until the attorney fees and costs are awarded by the district court.

Moreover, the United States Supreme Court has stated that in performing a lodestar analysis, "[t]he attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable." *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S. Ct. 939, 946 (1989) (addressing district court's award of attorney fees in case involving claim of deprivation of civil rights). This court has stated that limiting an attorney fee award to the contingent fee is improper where it does not take into account "the difficulties associated with preparing th[e] case [and] going through trial" and other factors. *S.B. Foot Tanning Co. v. Piotrowski*, 554 N.W.2d 413, 421 (Minn. App. 1996), *review denied* (Minn. Dec. 17, 1996) (involving challenge to attorney fees awarded to plaintiff in subrogation case). Moreover, Minnesota courts have generally used the lodestar method in determining the reasonableness of statutory attorney fees. *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 535 (Minn. 2013) (addressing an award of attorney fees in conjunction with a consumer protection claim).

Frauenshuh argues that *Blanchard*, *S.B. Foot Tanning*, and *Green* are distinguishable because they are examples of cases involving injunctive relief or small

28

claims "that constitute an exception to the general principle that contingency fee agreements should govern a plaintiff's attorney fees award."[10] But, Frauenshuh cites no law, and there appears to be none, requiring that a district court's lodestar analysis when awarding attorney fees under section 515B.4-116(b) be constrained by a contingent fee agreement between a party and its attorneys. Therefore, we reject Frauenshuh's argument that the district court erred by failing to limit the attorney fee award to the contingent fee agreement.

Frauenshuh next argues that the district court abused its discretion in awarding attorney fees because the fee award exceeds the damages award. In support of this argument, Frauenshuh cites *Asp v. O'Brien*, 277 N.W.2d 382 (Minn. 1979). In *Asp*, a mechanic's lien case, the Minnesota Supreme Court reduced the district court's attorney fee award to the mechanic's lienholder from $2,400 to $1,000 where it was awarded a lien in the amount of $4,359.46. 277 N.W.2d at 383, 385. In reducing the award, the supreme court stated that an award of attorney fees to mechanic's lienholders "should be made with caution so that property owners are not discouraged from challenging defective workmanship on the part of lien holders by excessive awards of attorney's fees." *Id.* at 385. In light of these concerns, the supreme court stated that it was "not inclined to allow the award of the full amount, particularly where the amount of the lien recovered is small

---

[10] We note that *S. B. Foot Tanning* involved the distribution of the proceeds of an action against a third-party tortfeasor to an employer and its workers' compensation insurer relative to its subrogation claim for workers' compensation benefits paid and payable to an injured employee. 554 N.W.2d at 415–16. In that workers' compensation benefits had already been paid in excess of $118,000, and future medical expenses were payable, this would not qualify as a small claim. *See id.*

29

in comparison to the attorney's fees assessed." *Id.* In *Bloomington Elec. Co. v. Freeman's, Inc.*, 394 N.W.2d 605, 608 (Minn. App. 1986), *review denied* (Minn. Dec. 17, 1986), another mechanic's lien case, this court reduced an attorney fee award of $11,150 to $5,000 where the amount secured at trial was approximately $12,000, citing *Asp* and "the policy of not discouraging valid lien claims."

However, the decisions in both *Asp* and *Bloomington Elec. Co.* were influenced largely by policy concerns relevant to mechanic's lien cases. In its reply brief, Frauenshuh cites two unpublished opinions of this court in support of its argument, but these opinions are not precedential. *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 582 n.2 (Minn. 2009) (providing that unpublished decisions from this court do not constitute precedent). Moreover, the Minnesota Supreme Court has stated that in conducting a lodestar analysis there is no "dollar value proportionality rule." *Green*, 826 N.W.2d at 538. Rather, "[t]he amount involved is merely one factor, among a host of others, that the district court is to consider in awarding reasonable attorney fees." *Id.* We conclude that the district court did not abuse its discretion by awarding attorney fees in an amount greater than the damages award.

Frauenshuh next argues that even under the lodestar analysis based on hourly rates and not limited by the contingent fee agreement, the district court abused its discretion in awarding attorney fees. Although Frauenshuh attempts to argue that the district court abused its discretion in applying all six of the lodestar factors, Frauenshuh only raises arguments that we have not already addressed with respect to the first two factors.

Regarding the first lodestar factor, requiring the consideration of the time and labor

30

required, it is undisputed that this case required a substantial amount of time and labor on the part of all parties. The district court found that the association's attorneys expended 1,139.55 hours at an hourly rate of $300. This case involved multiple parties, including Frauenshuh, the association, Kraus-Anderson, and multiple subcontractors, that engaged in extensive litigation, including significant pretrial and posttrial motions, as well as a two-week trial.

Frauenshuh argues that because the association brought five claims against two defendants, tried two of those claims, and only prevailed on one claim against one defendant, the association should not receive fees for time and labor expended on unsuccessful claims. In determining a reasonable attorney fee award where a plaintiff only succeeds on some of its claims, a court must evaluate "whether the unsuccessful claims were related to the successful claims." *Musicland Grp., Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 535 (Minn. App. 1993), *review denied* (Minn. Jan. 27, 1994). In cases where the claims "involve a common core of facts" or are "based on related legal theories[,] [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a claim-by-claim basis." *Id.* (quotation omitted). In such circumstances, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* (quotation omitted). Responding to Frauenshuh's argument that the total hours expended by the association should be separated between Frauenshuh and Kraus-Anderson, the district court stated that the association's claims should be considered as a whole because "the multiple aspects of this case cannot be reasonably separated into 515B or 327A claims." Given that, as the

district court noted, "[t]he investigation, discovery, litigation and trial all addressed the same common elements: the defects in the building and the responsibility for those defects," we conclude that the district court did not abuse its discretion by declining to divide the hours expended based on the various claims asserted by the association.

Frauenshuh also argues that some of the hours that the association's attorneys spent on the case are unreasonable because they consist of "unnecessary coordination and duplication of efforts" of the two attorneys working on the case. With regard to attorney fees, "[t]he reasonableness of the hours expended and the fees imposed raise questions of fact, and the district court's findings will be reversed only if they are clearly erroneous." *City of Maple Grove v. Marketline Constr. Capital, LLC*, 802 N.W.2d 809, 819–20 (Minn. App. 2011). After reviewing the hours claimed by the association's attorneys, we conclude that the district court's determination regarding the hours incurred by the two attorneys representing the association in this case is not clearly erroneous.

Regarding the second factor, the evaluation of the nature and difficulty of the responsibility assumed, the district court determined that the case was "difficult" and involved multiple parties and substantial litigation. Frauenshuh argues that the multiple motions, depositions, inspections, and parties involved in this case "are standard fare in construction defect litigation" and do not render this case difficult. But, the fact that many construction defect cases involve multiple parties and substantial litigation does not mean that the litigation in this case was not difficult. We conclude that the district court's determination that the multiple parties and substantial litigation in this case rendered it difficult is not clearly erroneous.

**B.** **Given that the district erred by denying the association's motion for JMOL with regard to the construction defects, it is appropriate to remand the attorney fee award to the district court for reevaluation.**

Because we agree with the association that the district court erred by denying the association's motion for JMOL with regard to the construction defects, we must address the association's argument in its related appeal regarding attorney fees. The association argues that it is entitled to the full amount of its requested attorney fees if this court concludes, as we have, that the district court erred by denying the association's motion for JMOL with regard to the construction defects. In considering the amount involved and result obtained factor of the lodestar analysis, the district court concluded that approximately one-half of the association's claim for attorney fees was justified under the circumstances. In making this determination, the district court reasoned in part that the association prevailed against only one defendant on one claim. Because the association's recoverable damages are doubled by this court's ruling with regard to the construction defects, the association urges this court to "honor the district court's attorney's fee analysis" and increase the attorney fees to the full amount requested because there is no longer a reason to halve the fees.

While the district court did take into account the fact that the association prevailed on only one claim in deciding to award half of the attorney fees requested by the association, this was one of many factors considered by the district court. Indeed, regarding the amount involved and the result obtained, the district court stated that "multiple aspects of this case cannot be reasonably separated into 515B or 327A claims," observed that the association had experienced "limited success on the merits," and noted that the association

prevailed against only one defendant.  The association's contention that the district court awarded only half of its requested attorney fees solely on the basis of its success, or lack of success, on its claims is an oversimplification of the district court's reasoning. Therefore, rather than award the full amount of the requested attorney fees to the association, we remand to the district court for reevaluation of the attorney fee award in light of this decision.

## VI. The district court did not err in awarding "costs of litigation" under Minn. Stat. § 515B.4-116(b).

Frauenshuh argues that the costs and disbursements awarded by the district court exceed the amount authorized by statute.  Generally, appellate courts review a district court's costs and disbursements award for an abuse of discretion.  *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 155 (Minn. 2014).  "Whether the district court erred in its interpretation of the statute authorizing the award of costs and disbursements . . . , however, is a legal question that we review de novo."  *Id.*

In an action commenced under the MCIOA, "[t]he court may award reasonable attorney's fees and *costs of litigation* to the prevailing party."  Minn. Stat. § 515B.4-116(b) (emphasis added).  Although the district court awarded the association a total of $75,766.41 in costs and disbursements, including $67,011.02 in expert witness fees, Frauenshuh contests only the district court's award of expert witness fees.  Minn. Stat. § 549.04 states that the prevailing party in a district court action "shall be allowed reasonable disbursements paid or incurred."  Minn. Stat. § 357.25 (2014) states that "[t]he judge of

any court of record, before whom any witness is summoned or sworn and examined as an expert in any profession or calling, may allow such fees or compensation as may be just and reasonable."

The association acknowledged before the district court that only $18,536.32 of its expert witness fees related to trial testimony preparation or trial testimony, and the district court recognized that ordinarily expert witness fees unrelated to trial testimony preparation cannot be recovered under Minnesota law. *See Lake Superior Ctr. Auth. v. Hammel, Green, & Abrahamson, Inc.*, 715 N.W.2d 458, 483 (Minn. App. 2006) (stating that district court may, in its discretion, award fees for pretrial preparation of expert witnesses), *review denied* (Minn. Aug. 23, 2006). The district court interpreted section 515B.4-116(b) broadly, however, and concluded that all $67,011.02 of the association's expert witness fees constituted "costs of litigation" because they were incurred in the investigation of the conditions of the building and were necessary for the preparation of the association's claims.

Frauenshuh contends that the district court's award of all of the association's expert witness fees was erroneous because the term "costs" in the context of Minn. Stat. § 515B.4-116(b) refers to costs recoverable under Minn. Stat. § 549.02. Section 549.02 provides that "[u]pon a judgment in the plaintiff's favor of $100 or more in an action for recovery of money only," a plaintiff may recover $200 in costs. Frauenshuh concedes, however, that the association is entitled to recover some portion of its expert fees as reasonable disbursements under section 549.04. Therefore, we must decide whether the district court erroneously awarded expert witness fees pursuant to section 515B.4-116(b) in excess of

35

the reasonable expert witness fees ordinarily allowed as disbursements under Minnesota law.

Because it is unclear whether "costs" under section 515B.4-116(b) refers to the costs provided by section 549.02 or more broadly refers to general litigation expenses, the statute is subject to more than one reasonable interpretation and is therefore ambiguous. Frauenshuh's argument that the term "costs" in section 515B.4-116(b) is limited to the costs recoverable under section 549.02 is undermined by the fact that such a reading would be duplicative of section 549.02. *See Thorpe v. Spaeth*, 211 Minn. 205, 209, 300 N.W. 607, 609 (1941) ("[T]he legislature cannot have intended to enact a nullity. . . ."). Moreover, the series-qualifier canon provides that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). Therefore, the term "reasonable" in section 515B.4-116(b) refers to both attorney fees and costs of litigation. As section 549.02 provides for specific amounts of costs that "shall" be awarded, while section 515B.4-116(b) provides for a discretionary award of "reasonable . . . costs of litigation," the term "costs" in section 515B.4-116(b) is not limited by the costs awarded under section 549.02.

Frauenshuh points out that the legislature has explicitly stated in other statutes its intention that a district court may award general litigation expenses, rather than expenses that are merely duplicative of the expenses that can be awarded under Minn. Stat. § 549.02 and Minn. Stat. § 549.04. *See, e.g.*, Minn. Stat. § 60B.06 (2014) ("[T]he court may award

36

such costs and other *expenses of litigation* as justice requires . . . ." (emphasis added));

Minn. Stat. § 144.993 (2014) ("[T]he state . . . may be allowed an amount determined by

the court to be the reasonable value of all or part of the *litigation expenses* incurred by the

state." (emphasis added)). The fact that the legislature has more clearly expressed its intent

in other statutes, however, does not render the term "costs of litigation" in section 515B.4-

116(b) unambiguous or resolve its ambiguity. Moreover, the remedies provided by chapter

515B are to be "liberally administered to the end that the aggrieved party is put in as good

a position as if the other party had fully performed." Minn. Stat. § 515B.1-114. We

conclude that the district court properly awarded expert witness fees unrelated to trial

testimony preparation to the association as "costs of litigation" under section 515B.4-

116(b).

## DECISION

Because we conclude that the district court did not err by partially granting the

association's motion for JMOL and holding Frauenshuh liable for the damages attributed

to the architect for the architectural design defects or in awarding costs and disbursements,

we affirm in part. However, Frauenshuh is also liable, as a matter of law, for breaching

the chapter 515B statutory warranties based on the jury's determination that Kraus-

Anderson breached the chapter 327A statutory warranty for its construction defects. For

that reason, we conclude that the district court erred by partially denying JMOL with regard

to the construction defects. Therefore, we reverse in part and direct the district court to

enter judgment for the association for an additional $101,250. Given our conclusion that

the district court erred by partially denying JMOL with regard to the construction defects, we remand to the district court for reevaluation of its attorney fee award.

**Affirmed in part, reversed in part, and remanded.**