**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0479**

Andrew Kaeding, et al.,
Respondents,

vs.

Karl Auleciems,
Appellant,

Susanne Auleciems,
Appellant.

**Filed October 31, 2016
Affirmed
Peterson, Judge**

Washington County District Court
File No. 82-CV-14-4555

Samuel C. Spaid, Minneapolis, Minnesota (for respondents)

Karl Auleciems, Lake Elmo, Minnesota (pro se appellant)

Susanne Auleciems, Lake Elmo, Minnesota (pro se appellant)

Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Bratvold, Judge.

**S Y L L A B U S**

I.      An attempt to waive Minn. Stat. § 504B.178 (2014) by agreeing to forfeit a security deposit as a remedy for violating a lease provision that does not require a payment of funds to the landlord is void and unenforceable under Minn. Stat. § 504B.178, subds. 3, 10.

II.     When a conciliation court decision is appealed by removal to the district court and the removing party does not prevail, the opposing party is not limited by Minn. Stat. § 491A.02, subd. 6 (2014), to recovering $50 for costs and disbursements.

**O P I N I O N**

**PETERSON**, Judge

In this landlord-tenant dispute regarding forfeiture of security deposits, pro se appellant landlords challenge the district court's summary judgment that the forfeiture clause in a lease is unenforceable and the district court's award of attorney fees, costs, and disbursements to respondent tenants. We affirm.

**FACTS**

Respondent-tenants Andrew and Elisa Kaeding leased a house from appellant-landlords Karl and Susanne Auleciems. The house had a basement, a main floor, and a second floor. The lease ran from April 1, 2013, through March 31, 2014, with monthly rent of $2,700, a $2,500 security deposit, and an additional $1,000 pet deposit. Respondents lived in the house with their two children and two dogs.

The lease prohibited pets from being in the basement or on the second floor. To prevent their dogs from going into the prohibited areas, respondents kept the basement door closed and installed a gate at the top of the stairs leading up to the second floor. Despite these precautions, the dogs got into the prohibited areas several times during respondents' tenancy. The dogs were always immediately removed from the prohibited areas and caused no damage.

After respondents moved out of the house, appellants retained the $3,500 in deposits and also sought an additional $1,425 for damages. Appellants sent respondents a letter in which they listed the items for which they were seeking damages[1] and informed respondents that the entire security deposit was forfeited because the dogs were on the upper and lower floors.

Respondents brought an action in conciliation court seeking to recover the $3,500. Appellants filed a counterclaim, asserting that they were entitled to retain the entire security deposit under a lease clause that stated that "[t]enants agree to forgoe [sic] security deposit if pets are found to have been on the top or bottom floors of the house." The conciliation court determined that the forfeiture clause was unenforceable but awarded appellants $800 for damages beyond normal wear and tear. The conciliation court awarded respondents the remaining $2,700 balance of the security deposits plus $75 in costs.

Appellants filed a demand for removal to district court. Respondents filed an amended complaint, and the parties filed summary-judgment motions. The district court granted the motions in part and denied them in part. The district court concluded that the forfeiture clause was unenforceable under Minn. Stat. § 504B.178, subds. 3(b) and 10 (2014). The district court also concluded that appellants' retention of the two deposits constituted bad faith under Minn. Stat. § 504B.178, subd. 7 (2014), and awarded respondents $1,000 in punitive damages. The district court granted summary judgment for

[1] On April 14, 2014, appellants sent respondents a letter itemizing damages that totaled $1,515, but appellants consistently requested $1,425 in damages throughout the court proceedings.

3

appellants on respondents' claim for unjust enrichment based on the lease making respondents responsible for snow removal and lawn care.[2]  The district court denied summary judgment on appellants' claim for $1,425 in damages and ordered that the issue of damages proceed to trial.

The damages issue was tried to the court, and, on the day of trial, appellants orally moved to add a diminution-of-value claim, asserting that damages that occurred during respondents' tenancy were a factor in appellants' decision to sell the property for $389,000 after respondents moved out, although appellants' initial asking price had been $469,000. Appellants' proposed order following trial set the diminution-of-value claim at $12,000.

The district court made specific findings on each item of damages claimed by appellants and awarded appellants $640 for damages beyond normal wear and tear and ordered that the balance of the security deposits, $2,860, be returned to respondents.  The district court determined that appellants failed to present sufficient evidence to prove their diminution-in-value claim.

Following trial, respondents submitted an application for costs and disbursements and a motion for attorney fees.  The district court awarded respondents $50 for costs under Minn. R. Gen. Pract. 524 and Minn. Stat. § 491A.02, subd. 7 (2014), and $1,142.95 for disbursements under Minn. Stat. § 549.04 (2014).  The disbursements included $601 in court fees, a $100 payment to a court reporter for a two-hour deposition, $241.95 for

---

[2] Respondents asserted the unjust-enrichment claim in their amended complaint.

4

deposition transcripts, and a $200 professional-witness fee for testimony on the diminution-of-value claim.

The district court determined that respondents were entitled to recover attorney fees under a lease clause that stated that "[t]he court may award reasonable attorney's fees and costs to the party who prevails in a lawsuit about the tenancy" and awarded respondents $12,350 for attorney fees. The fee award was based on 49.4 hours billed at $250 per hour, which the district court found was a reasonable rate for an attorney of counsel's experience and a reasonable number of hours for a contested matter with multiple motions and a one-day trial. The court explained:

> [Respondents] appear to have attempted to resolve the case as quickly as possible at each turn. [Appellants] have repeatedly prolonged and complicated this case. Rather than go directly to trial after losing most claims on summary judgment, [appellants] chose to increase their demands by adding a legally and factually baseless claim for the alleged diminution of value to the Premises, without properly filing any pleadings with this court. Clearly, the diminution of value claim was an attempt to weaken [respondents'] resolve with the specter of a financially crippling monetary judgment. [Respondents] were entirely within their rights to take these claims seriously, and invest in more time, discovery, research, trial preparation, and a trial.

This appeal followed.[3]

---

[3] This court dismissed an earlier appeal as premature. *Kaeding v. Auleciems*, No. A15-2012 (Minn. App. Jan. 15, 2016) (order).

**ISSUES**

I.      Did the district court err in granting respondents summary judgment on appellants' claim that the security deposits were forfeited?

II.     Did the district court err in awarding respondents $1,000 in punitive damages?

III.    Did the district court err in awarding respondents attorney fees?

IV.     Did the district court err in awarding respondents costs and disbursements?

**ANALYSIS**

**I.**

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP,* 824 N.W.2d 622, 627 (Minn. 2012). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 76-77 (Minn. 2002).

Statutory interpretation presents a question of law, which we review de novo. *Halvorson v. County of Anoka,* 780 N.W.2d 385, 389 (Minn. App. 2010). The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "When interpreting statutes, [an appellate court] give[s] words and phrases their plain and ordinary meaning. When legislative intent is clear from

6

the statute's plain and unambiguous language, [an appellate court] interpret[s] the statute according to its plain meaning without resorting to other principles of statutory interpretation." *Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 550 (Minn. 2016) (quotations omitted).

The Minnesota Legislature has enacted a statutory section that governs security deposits in residential rental agreements. That section provides that "[a]ny deposit of money, the function of which is to secure the performance of a residential rental agreement or any part of such an agreement, other than a deposit which is exclusively an advance payment of rent, shall be governed by the provisions of this section." Minn. Stat. § 504B.178, subd. 1. The function of the security deposit and the pet deposit that respondents paid appellants was to secure performance of the rental agreement. No part of the $3,500 was an advance payment of rent; respondents made separate advance payments for their first and last months' rent. Thus, the deposits are governed by Minn. Stat. § 504B.178.

Minn. Stat. § 504B.178 provides further:

> The landlord may withhold from the deposit only amounts reasonably necessary:
> (1) to remedy tenant defaults in the payment of rent or of other funds due to the landlord pursuant to an agreement; or
> (2) to restore the premises to their condition at the commencement of the tenancy, ordinary wear and tear excepted.

*Id.*, subd. 3(b). The section also provides that "[a]ny attempted waiver of this section by a landlord and tenant, by contract or otherwise, shall be void and unenforceable." *Id.*, subd. 10.

The legislative intent in enacting section 504B.178 is clear from the statute's plain and unambiguous language. When a tenant deposits money with a landlord to secure the performance of a residential lease agreement, the landlord may withhold money from the deposit for only two purposes: (1) to remedy defaults in the payment of funds due to the landlord pursuant to an agreement and (2) to repair damage to the rented property that exceeds ordinary wear and tear. Any attempt to waive this limitation on the use of a deposit is void and unenforceable.

Appellants stated in a letter to respondents that the entire deposit had been forfeited because "[t]he lease clearly states that if the dogs are ever in the upper or lower floors of the home that the tenant agrees to forfeit the entire security deposit." This statement demonstrates that the money was not withheld for the allowed purpose of repairing damage to the rented property;[4] it was withheld because respondents violated the lease provision that prohibited pets from being in the basement or on the second floor. Thus, the issue before us is whether the $3,500 was withheld to remedy a default in the payment of other funds due to the landlord pursuant to an agreement, which is the other allowed purpose under Minn. Stat. § 504B.178, subd. 3(b). We conclude that it was not.

The plain and ordinary meaning of "default" is "[f]ailure to perform a task or fulfill an obligation, especially failure to meet a financial obligation." *The American Heritage Dictionary of the English Language* 488 (3d ed. 1992). Respondents' failure to prevent their dogs from going into the basement or onto the second floor of the home they rented

---

[4] Appellants separately sought $1,425 for damage to the rented property.

was a "default" because it was a failure to fulfill an obligation under their lease. But it was not a default in the payment of funds due to appellants pursuant to an agreement.

Respondents did not agree to make a payment to appellants if a dog went into the basement or onto the second floor, and they had no obligation to do so. Consequently, when appellants withheld the $3,500, there had not been a default in the payment of funds due to appellants, and withholding the $3,500 violated the plain and unambiguous language of Minn. Stat. § 504B.178, subd. 3(b)(1), because the withholding was not reasonably necessary to remedy a default in the payment of funds due to appellants.

Appellants contend that the $3,500 were "other funds due to the landlord pursuant to an agreement" and argue that the $3,500 could be applied to any "agreement the appellant and respondent had to secure performance of any part of the lease." But the plain and unambiguous language of Minn. Stat. § 504B.178, subd. 3(b)(1), allows withholding only to remedy tenant defaults in the payment of funds due to the landlord; it does not allow withholding as a remedy for a default of any kind. Appellants' argument that the $3,500 may be withheld to secure performance of any part of the lease ignores the payment-default requirement in the statute.

The district court found that respondents' agreement to forfeit the security deposit was void and unenforceable under Minn. Stat. § 504B.178, subd. 10, because it was an attempt to waive section Minn. Stat. § 504B.178 by allowing appellants to retain the $3,500 without complying with Minn. Stat. § 504B.178, subd. 3(b). Because appellants did not provide this court with a copy of the trial transcript, the district court's finding that the parties attempted to waive section 504B.178 cannot be challenged on appeal. *See Duluth*

9

*Herald & News Tribune v. Plymouth Optical Co.*, 286 Minn. 495, 498, 176 N.W.2d 552, 555 (1970) (without a transcript, appellant cannot challenge the district court's findings of fact). But we agree with the district court's conclusion that an attempt to waive section 504B.178 by agreeing to forfeit a security deposit as a remedy for violating a lease provision that does not require a payment of funds to the landlord is void and unenforceable under Minn. Stat. § 504B.178, subd. 10.

**II.**

Within three weeks after termination of a tenancy, a landlord must return a security deposit to a tenant or provide a written statement showing specific reasons for withholding all or a portion of the deposit. Minn. Stat. § 504B.178, subd. 3(a).

> The bad faith retention by a landlord of a deposit, the interest thereon, or any portion thereof, in violation of [Minn. Stat. § 504B.178] shall subject the landlord to punitive damages not to exceed $500 for each deposit. . . . If the landlord has failed to comply with the provisions of [Minn. Stat. § 504B.178,] subdivision 3 . . ., retention of a deposit shall be presumed to be in bad faith unless the landlord returns the deposit within two weeks after the commencement of any action for the recovery of the deposit.

*Id.*, subd. 7.

Appellants argue that, because they were pursuing a reasonable claim to the security deposit, they did not retain a deposit in bad faith. The district court concluded that, as a matter of law, appellants acted in bad faith by failing to return any portion of respondents' security deposit within two weeks after respondents began their conciliation court action. Appellants argue that they complied with subdivision 3 by furnishing a written statement that they were retaining the entire security deposit based on the forfeiture clause in the

lease. But, as we have already concluded, withholding the $3,500 based on the forfeiture clause in the lease failed to comply with the provisions of Minn. Stat. § 504B.178, subd. 3. Under Minn. Stat. § 504B.178, subd. 7, this failure is presumed to be in bad faith because appellants did not return the $3,500 within two weeks after respondents commenced the action to recover it.

Appellants also argue that the district court erred by subjecting them to $1,000 in punitive damages because only one payment was made for the security deposits. But the lease provides for two deposits, a $2,500 security deposit and a $1,000 pet deposit. The two deposits are identified in the lease as separate items in a list that also includes advance payments for the first month's rent and the last month's rent. Under subdivision 7, the landlord is subject to punitive damages not to exceed $500 for each deposit.

**III.**

Appellants argue that the district court erred in awarding respondents attorney fees. We generally review an award of attorney fees for an abuse of discretion. *Carlson v. SALA Architects, Inc.,* 732 N.W.2d 324, 331 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). In Minnesota, attorney fees are recoverable if there is a specific contract provision permitting recovery. *Dunn v. Nat'l Beverage Corp.,* 745 N.W.2d 549, 554 (Minn. 2008).

"The primary goal of contract interpretation is to ascertain and enforce the intent of the parties." *Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 364 (Minn. 2009); *see also Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267, 271 (Minn. 2004). The parties' intent is determined from the contract's plain language if the agreement is unambiguous. *Travertine Corp.,* 683 N.W.2d at 271. A contract is ambiguous "if, judged

11

by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning." *Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973); *see also Dykes v. Sukup Mfg. Co.,* 781 N.W.2d 578, 582 (Minn. 2010). We apply a de novo standard of review to the question whether a contract is ambiguous. *Carlson v. Allstate Ins. Co.,* 749 N.W.2d 41, 45 (Minn. 2008).

The lease states, "The court may award reasonable attorney's fees and costs to the party who prevails in a lawsuit about the tenancy." Appellants argue that, the plain and ordinary meaning of "tenancy" is "the right to use another person's property" and the plain and ordinary meaning of "about" is "on the subject of," and, therefore, this lawsuit is not about "the tenancy" because it is not about who gets to possess the property. Appellants contend that "a lawsuit about the tenancy" means an eviction lawsuit. The district court determined that, under the unambiguous plain language of the lease, this lawsuit is "about the tenancy."

Although our dictionary differs slightly from appellants' dictionary, we agree with the substance of appellants' plain and ordinary meanings of "tenancy" and "about." *See The American Heritage Dictionary of the English Language* 5, 1849 (3d ed. 1992) (defining "about" as "[i]n reference to; relating to; concerned with," and defining "tenancy" as "[p]ossession or occupancy of lands, buildings, or other property by title, under a lease, or on payment of rent"). We also agree with appellants that this lawsuit is not about who gets to possess the property. But that does not mean that the lawsuit is not "about the tenancy."

12

The parties' lease created respondents' right to use appellants' property according to the terms of the lease. Among other things, the lease required respondents to pay security deposits, which are governed by Minn. Stat. § 504B.178. This lawsuit seeks to enforce Minn. Stat. § 504B.178, subd. 3(b), with respect to the parties' lease, and, therefore, it is on the subject of respondents' right to use appellants' property. Under the unambiguous meaning of the lease, this lawsuit is "about the tenancy."

Appellants also argue that, because neither party prevailed on all of the party's claims, neither party prevailed, and the district court, therefore, erred in determining that respondents were the prevailing party. Appellants contend that the criteria in Minn. Stat. § 491A.02, subd. 7 (2014), apply only when the district court is determining which party was the prevailing party for the purpose of awarding costs to the prevailing party, and the district court should not have used those criteria to determine which party was the prevailing party for the purpose of an attorney-fee award.

But the district court did not use the criteria in Minn. Stat. § 491A.02, subd. 7, to determine the prevailing parties. The district court stated that "[t]he most logical and straightforward way to determine who was the prevailing party in this conciliation appeal would be to consider the results of this case against the four Minn. Stat. § 491A.02, subd. 7(c)(1)-(4) scenarios in which a removing party is designated the prevailing party." But then, after noting that appellants objected to the court using Minn. Stat. § 491A.02, subd. 7, to determine who was the prevailing party, the district court concluded that "[t]he results in this case are so clear that it is not necessary to engage in a lengthy analysis under Minn.

13

Stat. § 491A.02, subd. 7, to determine who was the prevailing party." The court then explained why it determined that respondents were the prevailing parties:

> There is no question that [respondents] prevailed in the present lawsuit. While [respondents'] unjust enrichment claim was denied, that claim, like [appellants'] diminution of value claim, was added after appeal to the District Court. The heart of the present dispute is the two security deposits totaling $3,500.00. [Respondents] wanted the $3,500.00 returned. [Appellants] wanted to retain the $3,500.00 deposits and charge [respondents] an additional $1,425.00. Having recovered 81.7% ($2,860.00 ÷ $3,500.00) of their security deposit and being awarded $1,000.00 in punitive damages, [respondents] clearly prevailed in the present lawsuit. The margin of [respondents'] victory becomes even higher considering [appellants] only recovered 13% of their claimed $4,925.00 ($640.00 ÷ $4,925.00).

"We will not reverse the district court's decision on attorney fees absent an abuse of discretion." *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). "In determining who qualifies as the prevailing party in an action, the general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." *Borchert v. Maloney*, 581 N.W.2d 838, 840 (Minn. 1998) (quotation omitted). The district court did not abuse its discretion in concluding that respondents succeeded in the action and, therefore, were the prevailing parties. Respondents successfully resisted appellants' attempts to claim that the security deposits were forfeited and, ultimately, respondents were held liable for less than half of the amount of damages claimed by appellants.

Appellants also challenge the amount of attorney fees awarded.

> In determining the proper attorney fee award, the district court should review the hours expended and the hourly rates

> requested and base its decision on these and other relevant factors, including the nature and difficulty of the litigation; the amount in controversy and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and client.

*City of Maple Grove v. Marketline Constr. Capital, LLC,* 802 N.W.2d 809, 819 (Minn. App. 2011).

"The reasonableness of [the] hours expended and the fees imposed raise questions of fact," and we reverse findings of fact only if they are clearly erroneous. *Id*. at 819-20. Appellants' only argument that the attorney-fee award was unreasonable is that respondents' attorney was working for an organization that does legal work for free. This court, however, has applied the principle that reasonable attorney fees "are to be calculated according to the *prevailing market rates in the relevant community*, regardless of whether plaintiff is represented by private or nonprofit counsel." *Reome v. Gottliev*, 361 N.W.2d 75, 77-78 (Minn. App. 1985) (emphasis in original).

## IV.

The district court awarded respondents $1,142.95 in disbursements under Minn. Stat. § 549.04, which states, "In every action in a district court, the prevailing party . . . shall be allowed reasonable disbursements paid or incurred, including fees and mileage paid for service of process by the sheriff or by a private person." The district court also awarded respondents "costs of $50 pursuant to Minn. R. Gen. Pract. 524 and Minn. Stat. § 491A.02, subd. 7(b)."

15

Appellants argue that, because this case involves an appeal from a conciliation court decision by removal to the district court, respondents are limited by Minn. Stat. § 491A.02, subd. 6 (2014), to recovering no more than $50 for costs and disbursements. That statute states:

> The rules promulgated by the Supreme Court must provide for a right of appeal from the decision of the conciliation court by removal to the district court for a trial de novo. The notice of order for judgment must contain a statement that if the removing party does not prevail in district court as provided in subdivision 7, the opposing party may be awarded an *additional* $50 as costs.

(Emphasis added.) Subdivision 7 states, in part, "If the removing party prevails in district court, the removing party may recover costs from the opposing party as though the action were commenced in district court. If the removing party does not prevail, the court shall order an *additional* $50 to be paid to the opposing party as costs." Minn. Stat. § 491A.02, subd. 7 (emphasis added).

Minn. Stat. § 491A.02, subds. 6 and 7, do not refer to disbursements and, therefore, do not limit or otherwise affect the recovery of disbursements. As in any other action in district court, the prevailing party in a conciliation court action that is removed to district court is allowed reasonable disbursements under Minn. Stat. § 549.04. But, unlike the disbursements statute, the statute that generally governs costs in actions commenced in district court does not apply to actions removed to district court from conciliation court. Minn. Stat. § 549.02, subd. 1 (2014). Instead, costs in actions removed to district court from conciliation court are governed by Minn. Stat. § 491A.02, subd. 7.

16

When a removing party does not prevail in its appeal from a conciliation court decision, the district court awards judgment for the opposing party. Under Minn. Stat. § 491A.02, subd. 7, the district court is required to order that the opposing party be paid an additional $50 as costs. "Additional" means "over and above." *The American Heritage Dictionary of the English Language* 20 (3d ed. 1992). Under the plain and ordinary meaning of "additional," the $50 amount is not a limit on the costs and disbursements that an opposing party may be awarded, it is an amount that an unsuccessful removing party must pay "over and above" any other amount awarded to the opposing party.

## D E C I S I O N

Because respondents had not defaulted in the payment of funds due to appellants pursuant to an agreement, appellants violated Minn. Stat. § 504B.178, subd. 3(b)(1), when they withheld respondents' security deposits. The parties' agreement that the security deposits were forfeited if pets were found to have been on the top or bottom floors of the home was void and unenforceable under Minn. Stat. § 504B.178, subd. 10. Respondents may recover reasonable attorney fees at the prevailing market rate in the community even if their attorney was working for an organization that does legal work for free. Respondents were not limited by Minn. Stat. § 491A.02, subd. 6, to recovering no more than $50 for costs and disbursements.

**Affirmed.**

17