**KELBRO COMPANY, Respondent,**

v.

**VINNY'S ON THE RIVER, LLC, et al., Appellants.**

A16-0548

Court of Appeals of Minnesota.

Filed March 13, 2017

John A. Markert, Larson King, LLP, St. Paul, Minnesota (for respondent).

Daniel L. M. Kennedy, Kennedy Law Group, PLLC, Minneapolis, Minnesota (for appellants).

Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Larkin, Judge.

## OPINION

PETERSON, Judge

Appellants challenge judgments entered against them after a bench trial following removal from conciliation court. We affirm in part, reverse in part, and remand.

## FACTS

Appellant River Fun LLC (River Fun), a Minnesota limited liability company, was owned by appellant Tim Kennedy and non-party Jhalpaul Narpaul. River Fun owned Vinny's on the River LLC (Vinny's), a Minnesota limited liability company that operated a restaurant in a building owned by River Fun; the restaurant also was called Vinny's on the River.

In April 2010, River Fun entered into a credit agreement with respondent Kelbro Company (Kelbro), a Minnesota corporation. The credit agreement listed Vinny's as River Fun's "Assumed Name or Business Name" and obligated River Fun to "pay for any and all products, equipment, services or other merchandise purchased on credit" by Vinny's. Soon after, Vinny's and Kelbro entered into a products-requirement agreement and two equipment leases (beverage contracts). Under the beverage contracts, Kelbro supplied Vinny's with beverage products and related equipment and provided maintenance for the equipment.

In April 2013, Kelbro commenced an action in conciliation court, alleging that Vinny's and Tim Kennedy breached the beverage contracts and seeking $3,565.68 in damages. Vinny's and Tim Kennedy asserted a counterclaim, alleging that Kelbro breached the beverage contracts and seeking $1,050 in damages. On October 3, 2013, the conciliation court conducted a trial and issued an order for judgment against Kelbro on its claims and for Vinny's and Tim Kennedy on their counterclaims and awarded Vinny's and Tim Kennedy $1,125.

On October 21, 2013, Kelbro filed a demand for removal of the conciliation court action to the district court. The demand for removal was signed only by Jarrod Condon, Kelbro's nonattorney representative in the conciliation court action.[1] The next day, the district court issued an order that vacated the conciliation court judgment.

Vinny's and Tim Kennedy filed a motion to dismiss Kelbro's district court action on the ground that Kelbro's demand for removal was not signed by an attorney. Vinny's and Tim Kennedy refused Kelbro's request to stipulate to its amendment of the demand for removal. Kelbro then filed

---

1. "A corporation ... may appoint a natural person who is an employee of the party ... to appear on its behalf or settle a claim in conciliation court." Minn. R. Gen. Pract. 512(c).

a motion for leave to amend the demand for removal and a memorandum opposing the motion by Vinny's and Tim Kennedy to dismiss. Vinny's and Tim Kennedy filed a memorandum opposing Kelbro's motion for leave to amend. On April 4, 2014, the district court issued an order granting the motion for leave to amend and denying the motion to dismiss. One week later, Kelbro filed an amended demand for removal, which was signed by its attorney, John Markert.

In November 2014, Vinny's and Tim Kennedy urged Kelbro to dismiss Tim Kennedy from the district court action with prejudice and refused Kelbro's request to stipulate to the dismissal of Tim Kennedy without prejudice. Kelbro then filed a motion for an order dismissing Tim Kennedy without prejudice, and the district court granted the motion just before trial began on December 17.

On the first day of the bench trial in district court, attorney Daniel Kennedy, who represented Vinny's, alleged that Markert had a conflict of interest and orally moved for Markert's disqualification; the district court granted a continuance while it considered the conflict-of-interest issue.[2] Markert filed an informal memorandum that described his conflicts investigation, and he refused to withdraw from his representation of Kelbro. Daniel Kennedy filed an informal memorandum and withdrew the motion to disqualify but noted a continuing objection to Markert's refusal to withdraw from the representation.

The trial resumed on May 6, 2015, and concluded the next day. On August 25, the district court issued findings of fact, con-clusions of law, and order for judgment for Kelbro on its claims and against Vinny's on its counterclaim and awarded Kelbro $5,437.23 plus reasonable attorney fees and costs. The same day, partial judgment was entered against Vinny's.

After entry of partial judgment against Vinny's, Kelbro moved to amend its pleadings to add River Fun as a defendant and for an award of attorney fees and costs against Vinny's and River Fun. Kelbro later filed memoranda in support of the motion, requesting $28,242.23 in attorney fees and costs. Vinny's opposed Kelbro's motion to amend its pleadings and for attorney fees and costs.

Following a hearing, the district court, on February 5, 2016, granted Kelbro's motion to amend its pleadings, awarded $22,088.73 in attorney fees and costs against Vinny's and River Fun (fees-and-costs award), directed entry of judgment on the fees-and-costs award, and amended its August 25, 2015 judgment to add River Fun as a judgment debtor. On February 8, Kelbro filed an amended statement of claim and summons and a second amended demand for removal of the conciliation court action to district court, both of which listed Vinny's and River Fun as defendants.

River Fun, Vinny's, and Tim Kennedy (collectively, appellants) now appeal the August 25, 2015 and February 5, 2016 judgments.

## ISSUES

I.  Did the district court err by allowing Kelbro to amend its demand for removal to add an attorney's signature?

---

2.  The alleged conflict arose from legal work that Timothy Duncan, Markert's partner, performed for River Fun or Narpaul in 2009. Daniel Kennedy represented at trial that Duncan organized Vinny's. The Articles of Organization of Vinny's on the River, LLC name Daniel Kennedy as the organizer of the company, and, in a December 29, 2014 letter to the district court, Daniel Kennedy acknowledged that he organized Vinny's but he had forgotten doing so.

II. · Did the district court·err by dismissing Tim Kennedy from the action without prejudice?

III. Did the district court err in awarding Kelbro attorney fees and costs? ·

IV. Did the district court err by allowing Kelbro to amend its pleadings after trial to add River Fun as a defendant and make River Fun a judgment debtor?

## ANALYSIS

### I.

■ Kelbro acknowledges that its initial demand for removal of the conciliation court action to the district court was defective because it was not signed by an attorney. Citing *World Championship Fighting, Inc. v. Janos*, 609 N.W.2d 263, 264-65 (Minn. App. 2000), *review denied* (Minn. July 25, 2000), appellants argue that, because ·the demand for removal was not signed· by an attorney, the district court lacked subject-matter jurisdiction and should have dismissed the action instead of deciding its merits. Whether subject-matter jurisdiction exists "is a question of law that we review de novo." *Nelson v. Schlener*, 859 N.W.2d 288, 291 (Minn. 2015).

The opinion in *World Championship Fighting* supports appellants' argument. *See* 609 N.W.2d at 265 (affirming district court's dismissal of case removed from conciliation court by unrepresented corporation, reasoning that "[t]he district court was correct to conclude that it lacked jurisdiction over [the] case" because notice of removal was signed only by nonattorney). But the·relevant portion of that opinion was implicitly overruled by the supreme court's later opinion in *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307 (Minn. 2005).

In *Save Our Creeks*, the plaintiff, a nonprofit corporation, filed a complaint that was signed by a nonattorney, and the dis-

trict court permitted the plaintiff "to amend its complaint by adding an attorney's signature and allowed the amendment to relate back to the date the original complaint was filed." 699 N.W.2d at 308. The supreme court explicitly recognized that "[i]t is well settled under Minnesota common law· that a corporation must be represented by an attorney in legal· proceedings." *Id.* at 309. But the supreme court rejected the argument that this requirement is jurisdictional and held "that a complaint signed and. filed by a nonattorney· on behalf of a corporate entity is not a legal nullity." *Id.* at 310. The supreme court then considered the circumstances under which an amendment curing the lack of an attorney's signature on a complaint should be allowed and held

that an amendment to add an attorney's signature to a corporation's complaint should be permitted when the following four elements are met: (1) the corporation acts without knowledge that its action was improper; (2) upon notice, the corporation diligently corrects its. mistake by obtaining counsel, but in no event may it appear in court without an attorney; (3) the nonattorney's participation in the action is minimal; and (4) the nonattorney's participation results in no prejudice to the opposing party.

*Id.* at 311.

Because a demand for removal and a complaint are used in similar ways to commence an action in the district court, we conclude that the supreme court's. reasoning in *Save Our Creeks* with respect to a complaint should also apply to a demand for· removal. Kelbro's initial failure to present a demand for removal that was signed by an attorney was a curable defect, and the district court did not lack subject-matter jurisdiction over the action.

Appellants argue in the alternative that the district court should not have permitted Kelbro to amend its notice of removal because Kelbro had actual or implied knowledge of the attorney-signature requirement and, therefore, failed to satisfy the first prong of the *Save Our Creeks* test for amendment (amendment test). A district court's amendment decision is reviewed for abuse of discretion. *See 301 Clifton Place L.L.C. v. 301 Clifton Place Condo. Ass'n*, 783 N.W.2d 551, 561 (Minn. App. 2010) (stating that district courts have "discretion to sometimes allow amendment based on 'considerations of fault, diligence, and prejudice'" (quoting *Save Our Creeks*, 699 N.W.2d at 310)).

Appellants are correct that "if a corporation knows or should know that its action is improper, amendment will not be allowed." *Save Our Creeks*, 699 N.W.2d at 311. The record before us contains some evidence that Kelbro knew or should have known that its demand for removal had to be signed by an attorney. The demand-for-removal form that Condon signed stated, "If appealing party is a corporation, the party's attorney must sign," and Condon acknowledged in an affidavit that he read that statement before he signed the form.

But the record also contains evidence that Condon misunderstood the legal meaning of the language before he signed the form. Condon averred that he and Kelbro's vice-president met with Markert

> to discuss options for Kelbro to appeal the [conciliation court] judgment.... Markert told us that we could fill out the Demand for Removal without an attorney since conciliation court rules allow corporations to appear without attorneys. Markert went on to explain that once the court accepted the appeal and assigned a hearing date, he would need to provide the court with a notice of appearance since a corporation could not

appear in front of the judge without an attorney in district court.

> Following Markert's instructions, I filled out the Demand for Removal and signed it.... While I read the statement below the signature block, ... I was told by our attorney that Kelbro could file the Demand for Removal without an attorney and I knew that Markert would represent Kelbro when we went to court. I relied on this advice and believed that I was allowed to sign on behalf of Kelbro....

Markert averred:

> I told [Condon and Kelbro's vice-president] that Kelbro could submit the Demand for Removal without an attorney....
>
> I do not regularly advise clients on the procedures for conciliation court appeals and was under the impression that the Rules of Practice allowed corporations to appear in conciliation court without counsel and that this included making a demand for removal if a party is aggrieved by a conciliation court decision.

Appellants cite nothing in the record that suggests that Condon did not rely on Markert's erroneous legal advice. Instead, appellants essentially argue that Condon should not have relied on Markert's advice in light of the above-quoted language on the form. *See Save Our Creeks*, 699 N.W.2d at 311 (stating that first prong of amendment test is that "the corporation acts without knowledge that its action was improper" and that "if a corporation knows or *should know* that its action is improper, amendment will not be allowed" (emphasis added)).

We have found no Minnesota caselaw directly on point. However, we find persuasive a federal district court opinion in which the court applied the amendment

test and concluded that the first prong was met, as follows:

> [T]here is no evidence Plaintiff [church corporation] actually knew it could not file a petition without an attorney. Plaintiff has presented facts and evidence to show it was specifically advised by [an attorney] that it *could* file a petition signed by [the church's pastor].... The Court is unpersuaded by Defendant's argument that "[w]hether the pastor received bad legal advice from an attorney is immaterial to what Plaintiff should have known." A layman could not reasonably be expected to recognize bad legal advice. The Court instead finds Plaintiff acted without knowledge, actual or implied, that filing a lawsuit without an attorney was improper.

*Trinity Baptist Church v. GuideOne Elite Ins. Co.*, 654 F.Supp.2d 1316, 1323-24 (W.D. Okla. 2009) (citation omitted). And in *Trinity*, the specific advice from an attorney apparently consisted of little more than the attorney's post-consultation letter to the pastor confirming "that [the attorney] had not been employed to represent Plaintiff" and stating "you will continue pro se or hire an attorney some time in the future." *Id.* at 1319-20 (quotation marks omitted).

Unlike this broad statement, Condon specifically averred that Markert told him that "Kelbro could file the Demand for Removal without an attorney," and that "conciliation court rules allow corporations to appear without attorneys," but "a corporation could not appear in front of the judge without an attorney in district court." Condon, who had just represented Kelbro in the conciliation court action, read the form language in light of this advice and "believed that [he] was allowed to sign on behalf of Kelbro." On these facts, the district court was not required to impute knowledge of the requirement to

Kelbro, and the district court did not abuse its discretion by permitting Kelbro to amend its demand for removal.

## II.

■ Tim Kennedy argues that the district court erred by dismissing him from the action without prejudice and contends that any dismissal should have been with prejudice. Tim Kennedy's central argument is that

> Kelbro sued Kennedy and lost in conciliation court, which entered a judgment of dismissal against Kelbro. If Kelbro is allowed to remove that case post-trial to district court and then dismiss Kennedy without prejudice, Kelbro circumvents the conciliation court judgment and gets a new opportunity to sue Kennedy. The conciliation court judgment having been vacated upon the removal to district court, Kelbro could avoid application of the doctrine of res judicata.

■ A plaintiff may dismiss an action without a district court order "(1) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action." Minn. R. Civ. P. 41.01(a). Otherwise, "an action shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper." Minn. R. Civ. P. 41.01(b). "Court-ordered voluntary dismissals under rule 41.01(b) are, unless otherwise stated, without prejudice." *Butts ex rel. Iverson v. Evangelical Lutheran Good Samaritan Soc'y*, 802 N.W.2d 839, 841 (Minn. App. 2011), *review denied* (Minn. Oct. 26, 2011); *see also* Minn. R. Civ. P. 41.01(b) ("Unless otherwise specified in the order, a dismissal herein is without prejudice.").

"The district court has wide discretion in determining whether to grant a plaintiff's motion for dismissal." *Hoyt Prop., Inc. v. Prod. Res. Grp., L.L.C.*, 716 N.W.2d 366, 376 (Minn. App. 2006), *aff'd*, 736 N.W.2d 313 (Minn. 2007). "The court also has discretion to determine whether the dismissal should be with prejudice." *Id.* "This court will not reverse a district court's decision on a rule 41 motion unless the district court abuses its discretion." *Butts ex rel. Iverson*, 802 N.W.2d at 841 (quotation omitted).

Tim Kennedy's argument that "Kelbro could avoid application of the doctrine of res judicata" by dismissing him without prejudice fails to recognize that the doctrine of res judicata requires the existence of a final judgment. *City of Maplewood v. Kavanagh*, 333 N.W.2d 857, 860-61 (Minn. 1983). Under Minn. R. Gen. Pract. 515, a conciliation court judgment becomes final 20 days after transmission of notice of entry of judgment unless, inter alia, "removal to district court has been perfected." The conciliation court judgment was entered on October 4, 2013, and removal to district court was perfected on October 22, 2013. Consequently, the conciliation court judgment never became final and never had res judicata effect, regardless of the district court's decision to grant Kelbro's motion to dismiss Tim Kennedy without prejudice.

Tim Kennedy next argues that "[t]he district court abused its discretion in overlooking the prejudice" that resulted from his dismissal without prejudice "after two motions were heard and decided, a pretrial had occurred, and the parties had fully prepared for trial." In support of this argument, Tim Kennedy cites *Altimus v. Hyundai Motor Co.*, 578 N.W.2d 409 (Minn. App. 1998). *Altimus* held that a district court may refuse to allow a voluntary dismissal that will result in demon-strable prejudice to the dismissed party, such as "a voluntary dismissal that strips a defendant of a defense that would otherwise be available." 578 N.W.2d at 411; *see also Butts ex rel. Iverson*, 802 N.W.2d at 841, 843 (concluding that district court abused its discretion by granting plaintiffs' motion for voluntary dismissal where dismissal deprived defendants of existing defense).

But Tim Kennedy has not identified a lost defense. Instead, he vaguely asserts that voluntary dismissal caused him to lose his counterclaim against Kelbro and analogizes this loss to the loss of a defense. Minnesota law, however, provides that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim may remain pending for independent adjudication by the court." Minn. R. Civ. P. 41.01(b). Tim Kennedy did not object to his dismissal from the action; he actively sought dismissal from the action.

Tim Kennedy also appears to argue that he was prejudiced by his dismissal without prejudice because it "left him susceptible to Kelbro suing him again on the same issue." This court, however, has stated that "the mere prospect of a second lawsuit is not sufficiently prejudicial to justify denial of a rule 41.01(b) motion to dismiss." *Butts ex rel. Iverson*, 802 N.W.2d at 842 (quotation omitted).

Finally, Tim Kennedy asserts that "Kelbro admitted in a pretrial conference that it has no legal or factual case against [him]." But he cites no record support for this assertion, and we have found none. We will not rely on Tim Kennedy's unsupported assertion to revive his otherwise unsuccessful arguments.

## III.

"In Minnesota, attorney fees are recoverable if there is a specific contract provision permitting recovery." *Kaeding v. Auleciems*, 886 N.W.2d 658, 666 (Minn. App. 2016). An appellate court "typically will not interfere with a district court's award of attorney fees absent an abuse of discretion." *In re Stisser Grantor Trust*, 818 N.W.2d 495, 509-10 (Minn. 2012). And an appellate court "will not set aside a district court's factual findings underlying an award of attorney fees unless they are clearly erroneous." *County of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013) (quotation omitted).

"Because the district court is the most familiar with all aspects of the action from its inception through post trial motions, it is in the best position to evaluate the reasonableness of requested attorney fees." *650 N. Main Ass'n v. Frauenshuh, Inc.*, 885 N.W.2d 478, 494 (Minn. App. 2016) (quotation omitted), *review denied* (Minn. Nov. 23, 2016). "With regard to attorney fees, the reasonableness of the hours expended and the fees imposed raise questions of fact, and the district court's findings will be reversed only if they are clearly erroneous." *Id.* at 497 (quotation omitted).

Appellants do not challenge the district court's conclusion that Kelbro, as the prevailing party in the district court action, is entitled to recover its reasonable attorney fees and costs under provisions in the beverage contracts that permit recovery. Instead, appellants challenge the reasonableness of the $22,088.73 fees-and-costs award.

Appellants first argue that the district court erred in awarding Kelbro its attorney fees and costs for legal work that was necessitated or made more complicated by Kelbro. Appellants identify this work as the work related to Kelbro's "improper" removal of the conciliation court action to district court, the work related to Kelbro's "frivolous" claims against Tim Kennedy, and the work related to the attorney-conflict-of-interest issue.

Regarding the removal work, appellants acknowledge that "Kelbro was not billed for much of this work." Our review of the record reveals that Kelbro was charged $107 for work related to removal. We conclude that any error in including this $107 in the fees- and-costs award was de minimus and does not undermine the award. *See Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 776 N.W.2d 172, 179 (Minn. App. 2009) (considering judgment debtors' argument that attorney-fee award should not have included fees incurred in correcting scrivener's error in mortgage document created by judgment creditor's attorneys, reasoning that "attorney fees that [judgment creditor] incurred in pursuing reformation of the mortgage were not substantial," and concluding that "the inclusion of these fees was at most de minimus error that does not justify a remand").

Regarding the dismissed-claims work, appellants argue that "Kelbro's suit against [Tim] Kennedy never had factual or legal merit" and urge us to remand to the district court to "[p]ars[e] out attorney fees related to litigation with Kennedy." "In determining a reasonable attorney fee award where a plaintiff only succeeds on some of its claims, a court must evaluate whether the unsuccessful claims were related to the successful claims." *Frauenshuh*, 885 N.W.2d at 497 (quotation omitted). "In cases where the claims involve a common core of facts or are based on related legal theories, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a

claim-by-claim basis." *Id.* (quotation omitted). "In such circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* (quotation omitted).

Tim Kennedy was one of two owners of River Fun, which owned Vinny's. Tim Kennedy was involved in the formation and breach of the beverage contracts, as well as the day-to-day operations of the restaurant. Kelbro's theory of the case was that (1) Vinny's breached the beverage contracts, and (2) Tim Kennedy personally guaranteed the beverage contracts. Because Kelbro's claims against Vinny's and Tim Kennedy shared both a common core of facts and related legal theories, the district court did not abuse its discretion by declining to reduce the fees-and-costs award on the ground that Kelbro did not prevail on its claim against Tim Kennedy. *See Frauenshuh*, 885 N.W.2d at 497 (rejecting defendant's argument that "because [plaintiff] brought five claims against two defendants, tried two of those claims, and only prevailed on one claim against one defendant, [plaintiff] should not receive fees for time and labor expended on unsuccessful claims"); *Riverview*, 776 N.W.2d at 179-80 (concluding that district court was not required to subtract from attorney-fee award fees related to first mortgagee's unsuccessful motion for temporary injunction against second mortgagee, reasoning that mortgagors did not dispute that motion "arose at least as an indirect result of [mortgagors'] default and [first mortgagee's] subsequent action to recover").

■ Appellants also argue that Markert had a conflict of interest and a professional duty to decline to represent Kelbro without a waiver from Vinny's. Appellants contend that "[they] should not be charged for the foreseeable results of [Markert's] failure to perform a proper conflicts check" or his decision to "pursue litigation despite an impermissible conflict of interest." But the conflicts work was triggered by Daniel Kennedy's mid-trial representation that Markert's partner performed legal work for the formation of Vinny's that Kennedy later acknowledged he had performed, and by Kennedy's oral motion to disqualify Markert, which was later withdrawn. In a posttrial order, the district court found that Daniel Kennedy's mid-trial representation "unnecessarily caused a six-month delay of the court trial proceedings, caused additional costs for both parties, and wasted valuable court resources." On these facts, the district court did not abuse its discretion in determining that the conflicts work is chargeable to Vinny's.

■ Finally, appellants argue that the fees-and-costs award is unreasonable in that it is disproportionate to the amount in controversy and the amount awarded on the merits.

The test for determining the reasonableness of attorney fees is the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client.

*Northfield Care Ctr., Inc. v. Anderson*, 707 N.W.2d 731, 736 (Minn. App. 2006) (quotations omitted). As noted above, "[the district court] is in the best position to evaluate the reasonableness of requested attorney fees," and reasonableness is a question of fact that we review for clear error. *Frauenshuh*, 885 N.W.2d at 494, 497 (quotation omitted).

The $22,088.73 fees-and-costs award is about four times greater than the $5,437.23

judgment. The award is $6,153.50 less than Kelbro requested because the district court reviewed Markert's itemized billings for legal work and reduce the billings for some work. The district court also acknowledged that Markert's billings greatly exceeded the judgment on the merits. But the court then found that, due to Vinny's and Tim Kennedy's litigation conduct, Kelbro "incurred substantially more attorney fees than what would likely have been expected in a case of this relatively minor magnitude and complexity."

Appellants do not directly challenge this finding of fact, which has ample support in the record and is not clearly erroneous. Instead, appellants appear to argue that the disproportionality of the fees-and-costs award *alone* renders the award unreasonable. This argument incorrectly reduces the reasonableness test to a single factor, contrary to caselaw. *See Northfield*, 707 N.W.2d at 736 (identifying six-factor test of reasonableness and concluding that district court did not clearly err in finding that $14,265.62 attorney-fee award was reasonable notwithstanding conciliation court claim and judgment of only $3,838.33). We reject appellants' argument and affirm the fees-and-costs award.

## IV.

After the trial was completed and a partial judgment was entered against Vinny's, the district court allowed Kelbro to amend its statement of claim and summons and its demand for removal to add River Fun as a defendant. In support of this decision, the district court quoted Minn. R. Civ. P. 15.02, which states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be

necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

Citing *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 295 (Minn. 2003), the district court stated that "[t]he Minnesota Supreme Court has interpreted this rule to allow the post-judgment addition of a party defendant." The court then found "no prejudice to River Fun if it is added as a defendant" and that "both River Fun and Vinny's impliedly consented to trying the case on the merits with River Fun included as a named defendant." The court concluded that "amendment of the pleadings is appropriate and necessary to conform the pleadings to the evidence presented at trial." In the same order, the court ruled that River Fun is jointly and severally liable for the August 25, 2015 and February 5, 2016 judgments against Vinny's.

▮▮▮ River Fun argues that the district court lacked personal jurisdiction over it because it "was never served with any process, motions, or other documents in the conciliation court or district court matters and took no part in those court cases." River Fun also appears to argue that the district court (1) clearly erred in finding that River Fun impliedly consented to being named as a defendant and (2) abused its discretion in granting Kelbro's posttrial motion for leave to amend the pleadings notwithstanding Kelbro's lack of diligence in making the motion. Finally, River Fun complains that it was added as a defendant "when it was too late … to assert any factual or legal defenses."

After a responsive pleading has been served, "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01; *see also Hoeft v. Hennepin County*, 754 N.W.2d 717, 728

(Minn. App. 2008) (stating that "the district court shall liberally permit a party to amend a complaint, unless the adverse party would be prejudiced"), *review denied* (Minn. Nov. 18, 2008). "Generally, the decision to permit or deny amendments to pleadings is within the discretion of the district court and will not be reversed absent a clear abuse of discretion." *Harborage I*, 664 N.W.2d at 295.

In *Harborage I*, an employee obtained a posttrial judgment against her employer on claims arising from her work at a bar operated by the employer. 664 N.W.2d at 292-93. The employer appealed, and, in large part, this court affirmed. *See Johns v. Harborage I, Ltd.*, 585 N.W.2d 853 (Minn. App. 1998). When the employee tried to collect on the underlying judgment, she found that the employer had liquidated its assets and transferred operation of the bar to a legally distinct entity. *Harborage I*, 664 N.W.2d at 293. The employee then moved to amend the complaint in the underlying action, seeking to add the legally distinct entity as a defendant. *Id.* at 294. The district court granted the employee's motion, and the amended complaint named the entity as a defendant in the underlying action. *Id.* The employee moved for summary judgment against the entity, arguing that the entity was liable for the underlying judgment as the employer's successor. *Harborage I*, 664 N.W.2d at 294. The entity responded by denying successor liability and also moved for summary judgment. *Harborage I*, 664 N.W.2d at 294. The district court granted the employee's summary-judgment motion and ordered the underlying judgment amended to add the entity as a judgment debtor. *Id.* at 294-95.

The entity appealed, and this court held that rule 15.01 did not permit post-judgment amendment of a complaint to add a defendant. *Id.* at 295. The employee appealed. *Id.* The supreme court considered the employee's argument that this court "erred in holding that Rule 15.01 of the Minnesota Rules of Civil Procedure does not permit a post-judgment, post-appeal amendment of a complaint." *Id.* The supreme court questioned the entity's reliance on "a number of federal cases that ... hold that once judgment is entered, the court cannot allow amendment of the complaint." *Id.* The supreme court distinguished those cases on the grounds that they "generally deal with the situation where the proposed amendment represents a challenge to the judgment," but "[t]his is not true here. [The employee] does not challenge the [underlying] judgment, but seeks to enforce it against a successor party." *Id.* The supreme court continued:

As such, this case closely parallels the recent United States Supreme Court decision in *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 ... (2000). There, the district court allowed a third-party complaint to be amended to add the sole shareholder as a third-party defendant after judgment had been entered on the third-party complaint against the corporation. The amendment was sought because the judgment creditor could not collect from the corporation. Although the Court reversed the summary judgment entered against the sole shareholder on due process grounds, because his liability had been determined without an opportunity to be heard, the Court allowed the amended complaint to stand and remanded to allow the sole shareholder to present a defense.

The Supreme Court, therefore, recognized that there are situations in which it is permissible to amend a complaint after entry of final judgment. Such a view is consistent with the statement of this court that "[u]nder our modern sys-

tem of pleading and practice the amendment of pleadings is liberally allowed even after judgment has been entered." *Crum v. Anchor Cas. Co.*, 264 Minn. 378, 389, 119 N.W.2d 703, 710 (1963). *Id.* at 295-96 (citations omitted). The supreme court reversed. *Id.* at 300.

██ But, the supreme court relied on Minn. R. Civ. P. 15.01 to support post-judgment amendment of a complaint. *Id.* at 295-96. Consequently, *Harborage I* does not stand for the proposition that Minn. R. Civ. P. 15.02 authorizes the post-judgment amendment of a complaint to add a defendant. *Harborage I* indicates no more than that Minn. R. Civ. P. 15.01 permits amendment of a pleading to add an adverse party even after judgment has been entered on the claims asserted in the pleading. *Id.* at 295. But *Harborage I* also suggests that amending a pleading post-judgment to add an adverse party violates due process unless the adverse party has a post-amendment opportunity to contest its liability on the claims asserted in the pleading. *Id.* (citing *Nelson*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530). We, therefore, consider *Nelson.*

In *Nelson*, Adams USA, Inc., obtained a judgment against Ohio Cellular Products Corporation in federal district court. *Nelson*, 529 U.S. at 462, 120 S.Ct. at 1582. Doubting Ohio Cellular's solvency, Adams moved to amend its pleading to add Donald E. Nelson, Ohio Cellular's president and sole shareholder, as an adverse party. *Id.* at 462-64, 120 S.Ct. at 1582-83. Adams also asked the district court to amend the judgment to add Nelson as a judgment debtor. *Id.* at 463, 120 S.Ct. at 1582. The district court granted Adams's motion, which simultaneously made Nelson a party and subjected him to the judgment. *Id.*

On Nelson's appeal, the United States Court of Appeals for the Federal Circuit affirmed, reasoning that Nelson had not shown that "anything different or additional would have been done" to defend against the claim asserted in Adams's pleading had Nelson individually already been added as a party or had he been a party from the outset. *Id.* at 463, 120 S.Ct. at 1583. The Court of Appeals concluded that Nelson had not been prejudiced by the post-judgment joinder.

The United States Supreme Court granted certiorari and reversed, reasoning as follows:

Adams' motion . . . sought more than permission to amend the pleading. It sought simultaneously an amended judgment, subjecting Nelson to liability as soon as he was made a party. In presenting the motion, Adams offered no reason why the judgment should be altered immediately. . . . [I]t did not explain why Nelson, once joined as a party, should not be permitted to state his side of that argument. The District Court seems not to have paused over this question, for it allowed the pleading amendment and altered the judgment at a single stroke. . . .

. . . .

The propriety of allowing a pleading alteration depends not only on the state of affairs prior to amendment but also on what happens afterwards. Accordingly, Rule 15 both conveys the circumstances under which leave to amend shall be granted and directs how the litigation will move forward following an amendment. When a court grants leave to amend to add an adverse party after the time for responding to the original pleading has lapsed, the party so added is given "10 days after service of the amended pleading" to plead in response. Fed. Rule Civ. Proc. 15(a). This opportunity to respond, fundamental to due process, is the echo of the opportunity to respond to original pleadings secured by

Rule 12. *See* Fed. Rule Civ. Proc. 12(a)(1). Thus, Rule 15 assumes an amended pleading will be filed and anticipates service of that pleading on the adverse party.

Nelson was never served with an amended pleading.... Nor, after the amendment naming him as a party, was Nelson accorded 10 days to state his defenses against personal liability .... Instead, judgment was entered against him the moment permission to amend the pleading was granted.... Adams points to nothing in the record indicating that Nelson affirmatively relinquished his right to respond on the merits of the case belatedly stated against him in his individual capacity. Accordingly, the proceedings did not comply with Rule 15, and neither did they comport with due process.

*Nelson*, 529 U.S. at 464, 466, 120 S.Ct. at 1583-84 (citations omitted).

Accordingly, we conclude that the district court erred in relying on *Harborage I* as authority for permitting a post-judgment amendment to add a defendant under Minn. R. Civ. P. 15.02. We have found no Minnesota precedent that interprets Minn. R. Civ. P. 15.02 to authorize an amendment of a pleading to add a party over its objection.[3] Rule 15.02 allows amendment of the pleadings when "issues not raised by the pleadings are tried by express or implied consent of *the parties.*" Minn. R. Civ. P. 15.02 (emphasis added). A party added after trial could not have consented as a party to anything that occurred during trial. *Cf. Jack Frost, Inc. v.*

*Engineered Bldg. Components Co.*, 304 N.W.2d 346, 350 (Minn. 1981) (citing Minn. R. Civ. P. 15.02 and holding that district court did not err by allowing posttrial amendment of complaint to rename third-party defendant as direct party defendant where "[t]he record shows that [third-party defendant] litigated the questions of its negligence and strict liability and during the trial was treated by the trial judge and counsel as a defendant subject to direct liability"). The district court erred in concluding that rule 15.02 authorizes the amendment of the pleading to add River Fun as a party over its objection.

We acknowledge that Minn. R. Civ. P. 15.01 permits the amendment of a pleading to add an adverse party after judgment has been entered on the claims asserted in the pleading. *Harborage I*, 664 N.W.2d at 295. But, even if the post-judgment amendment of Kelbro's pleadings to add River Fun as a defendant was permissible under rule 15.01, the district court erred by simultaneously granting Kelbro's motion to amend and directing entry of judgment against River Fun. Notwithstanding River Fun's "failure to show that anything different or additional would have been done to stave off the judgment had [River Fun] been a party ... from the outset of the litigation," River Fun had a due process "right to respond on the merits of the case belatedly stated against [it]." *Nelson*, 529 U.S. at 465-66, 120 S.Ct. at 1583-84 (quotation omitted); *see also* Minn. R. Civ. P. 15.01 (providing that "[a] party shall plead in response to an amended pleading ... within 10 days after service of the amend-

---

**3.** In *Bolen v. Glass*, this court affirmed the district court's grant of the original plaintiffs' posttrial rule 15.02 motion to amend the complaint to add a plaintiff, reasoning in part that "[defendant]'s answer had alleged as an affirmative defense the [original plaintiffs'] failure to add [the new plaintiff] as an indispensable party." 737 N.W.2d 856, 861 (Minn. App.

2007), *rev'd on other grounds*, 755 N.W.2d 1 (Minn. 2008). In that case, however, the new plaintiff apparently did not object to the amendment. *See id.* at 860-61 (noting that new plaintiff testified at trial, shared original plaintiffs' central legal argument, and benefited from injunction entered against defendant).

ed pleading"). River Fun did not have an opportunity to respond before judgment was entered. *See Nelson*, 529 U.S. at 466, 120 S.Ct. at 1584 (concluding that "the proceedings did not comply with Rule 15, and neither did they comport with due process," when "judgment was entered against [Nelson] the moment permission to amend the pleading was granted"); *cf. Harborage I*, 664 N.W.2d at 294-96, 300 (approving district court's grant of plaintiff's post-judgment motion to amend complaint to add defendant when new defendant received post-amendment opportunity to contest its liability in summary-judgment proceedings).

## DECISION

Because the district court erred by allowing Kelbro to amend its pleadings to simultaneously add River Fun as a defendant and make River Fun a judgment debtor, we reverse the August 25, 2015 and February 5, 2016 judgments to the extent that they impose liability on River Fun and remand for further proceedings consistent with this opinion. The judgments are affirmed in all remaining respects.

**Affirmed in part, reversed in part, and remanded.**